EXHIBIT "1"

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Sep-10  14:37:51
60CV-21-5660
C06D12 : 25 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**STONE WORKS, LLC**                                            **PLAINTIFFS**

**VS.**                    **CASE NO. CV-_____**

**RANDY SIMS;**
**MEGAN SIMS;**
**WILLIAM THOMAS;**
**STONE CONCEPTS, LLC;**
**MARTY HESCH;**
**EDWARD FRALEY**                                        **DEFENDANTS**

## VERIFIED COMPLAINT FOR DAMAGES AND TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

COMES NOW, Plaintiff Stone Works, LLC, by and through its attorneys, Hodge Calhoun Giattina, PLLC and Lassiter & Cassinelli, and for its Verified Complaint for Damages and Temporary and Preliminary Injunctive Relief, states as follows:

### PARTIES

1.   Plaintiff Stone Works, LLC is a Limited Liability Corporation established and located in Pulaski County, Arkansas.

2.   Defendant Randy Sims is an individual and resident of Saline County, Arkansas.

3.   Defendant Megan Sims is an individual and resident of Saline County, Arkansas.

4.   Defendant William Thomas is an individual and resident of Pulaski County, Arkansas.

5.   Defendant Stone Concepts, LLC is a Limited Liability Corporation established and located in Poinsett County, Arkansas.

1

6.   Defendant Marty Hesch is an individual and is believed to be a resident of Poinsett County, Arkansas. Upon information and belief, Defendant Marty Hesch is the owner of Defendant Stone Concepts, LLC.

7.   Defendant Edward Fraley is an individual and is believed to be a resident of Springfield, Missouri. Upon information and belief, he is employed as a Sales Representative for Centurion Stone, a company headquartered in Nashville, Tennessee that manufacturers stone veneer.

8.   Jurisdiction and venue are proper with the Court.

## FACTUAL BACKGROUND

9.   Defendant Randy Sims, Defendant Megan Sims, and Defendant William Thomas ("Defendant-Employees") were all – until recently – employees of Plaintiff Stone Works, LLC. Defendant Randy Sims worked as Superintendent, Defendant Megan Sims worked as the Office Manager, and Defendant William Thomas worked as Sales Representative. Defendants Randy Sims and Megan ("Sims Defendants") Sims are married.

10.  The Defendant-Employees signed employment agreement, non-disclosure and non-compete agreements with Plaintiff.  The agreements, in part, prohibited Defendants from competing with Plaintiffs, soliciting or servicing clients of the Plaintiff, or interfering with Plaintiffs' business; prohibited Defendants from engaging in any other business activities during the employment; prohibited Defendants from revealing confidential information or trade secrets, or threatening to reveal this information; and entitling Plaintiffs to an injunctions from said disclosure or from rendering any services to any entity to whom the information has been or is threatened to be disclosed; required Defendants to return all

2

originals and copies of Plaintiff's information; prohibited Defendants from controlling,

consulting or being employed by any similar business for a period of one year.

11.   Specifically, in relevant part, the Employment Agreements contains the following

provisions:

> 6. **Confidentiality of Proprietary Information**. Employee agrees, during or after the term of this employment, not to reveal confidential information, or trade secrets to any person, firm, corporation, or entity. Should Employee reveal or threaten to reveal this information the Company shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed, the right to secure an Injunction Is not exclusive, and the Company may pursue any other remedies It has against the Employee for a breach or threatened breach of this condition, including the recovery of damages from the Employee.
>
> 7. **Non-Compete Agreement**: The Arkansas Non-Compete Agreement, provided, must be signed before the employee can begin employment.
>
> 12. **Return of Company Information and Property**. Upon termination of my employment, the employee shall disclose and provide to the Company all originals and all copies which are in their possession or under their control;; including, but not limited to, all notes, memoranda, records, reports, drawings, blueprints, codes, programs, software, manuals, materials and data of any nature which are the property of Company, and every item in their possession or under my control that is property of the Company or contains Confidential Company information.

Defendant-Employees continue breaching provisions 6, 7, and 12 of their Employment

Agreements.

12.   Defendant-Employees also continue to breach the following provisions of their Non-

Disclosure Agreements:

> 1. **CONFIDENTIAL INFORMATION**. Confidential Information shall include, but not be limited to documents, records, information and data (whether verbal, electronic or written), drawings, models, apparatus, sketches, designs, schedules, product plans, marketing plans, technical procedures, manufacturing processes, analyses,

3

compilations, studies, software, prototypes, samples, formulas, methodologies, formulations, patent applications, know-how, experimental results, specifications and other business information, relating to Company's business, assets, operations or contracts, furnished to Recipient and/or Recipient's affiliates, employees, officers, owners, agents, consultants or representatives, in the course of their work contemplated in this Agreement, regardless of whether such Confidential Information has been expressly designated as confidential or proprietary. Confidential Information also includes any and all analyses, compilations, work product, studies and other data or material prepared by or in the possession or control of the Recipient, which contain, include, refer to or otherwise reflect or are generated from any Confidential Information. Confidential Information may be provided in written, oral, electronic or other form. Recipient acknowledges that no representation or warranty, express or implied has been or is made by or on behalf of Company as to the accuracy or completeness of the Confidential information furnished to the Recipient.

**3. PERIOD OF CONFIDENTIALITY AND NON-USE**. Recipient (including its affiliates, employees, agents and consultants) shall maintain in strict confidence for a period of five (5) years from the Effective Date and not disclose any Confidential Information it receives from Company to any third party or use the Confidential Information for its own or any other party's benefit, except in furtherance of its obligations to Company pursuant to any business transaction it may enter into with Company. Recipient shall use, as a minimum, the same degree of care to avoid disclosure or use of the Confidential Information as it employs with respect to its own confidential, proprietary and secret information of like importance, but in any case using no less than a reasonable degree of care. Recipient shall limit access to all Confidential Information to only those of Recipient's personnel, agents and representatives who need to know such information for carrying out Recipient's obligations to Company pursuant to any business transaction it may enter into with Company and the Confidential Information will be used only for carrying out Recipient's obligations to Company pursuant to any business transaction it may enter into with Company. Recipient shall insure that its affiliates, employees, officers, directors, owners, agents, consultants, and representatives who are given access to the Confidential Information by or on behalf of Recipient shall be bound by and shall comply with the terms of this Agreement.

**7. NO PUBLIC COMMENT**. Recipient shall not directly or indirectly make any public comment, statement, or communication

4

with respect to, or otherwise disclose or permit the disclosure to any third party of any Confidential Information or of any matter relating to the Subject Matter or purpose or any transactions contemplated by the parties in connection therewith, without the prior written consent of Company.

**8. NOTICE OF UNAUTHORIZED USE OR DISCLOSURE.** Recipient shall notify Company immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by Recipient or any third party, and will cooperate with Company in every reasonable way to help Company regain possession of the Confidential Information and prevent its further unauthorized use or disclosure.

**9. OWNERSHIP AND RETURN OF CONFIDENTIAL INFORMATION.** All Confidential Information disclosed to Recipient shall be and remain the property of Company. Upon Company's written request, Recipient shall promptly return all Confidential Information (including all originals, copies, reproductions and summaries of such Confidential Information), or certify its destruction in writing, and keep the same confidential and secret in accordance with this Agreement.

**15. INJUNCTIVE RELIEF.** Recipient understands and agrees that any use or dissemination of Confidential Information in violation of this Agreement will cause Company irreparable harm, and that monetary damages may not be a sufficient remedy for unauthorized use or disclosure of Confidential Information, and that Company may be left with no adequate remedy at law; therefore, Company shall be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. Such remedies shall not be deemed to be the exclusive remedy for any breach of this Agreement but shall be in addition to all other remedies available at law or in equity.

As set forth above, injunctive relief is available as a remedy for breaches of the confidentiality provisions of the Agreements. Defendant-Employees continued actions constitute breaches of the provisions of the Non-Disclosure Agreement and Defendant-Employees be ordered to immediately cease these breaches.

13.     Finally, Defendant-Employees also continue to breach the following provisions of their Arkansas Non-Compete Agreements:

2. Non-Compete/Disclosure: During the tenure of the Recipient with the Company and the Time Period stated in Section 3 the Recipient shall not:

Business Practices - Provide the same or similar industry products, services, or engage in any other way representation of any other business of a similar nature to the business of the Company without written consent. It is understood that the Recipient will be representing the Company exclusively during their tenure unless written notice has been provided from either of the Parties.

Clients/Customers - Directly or indirectly engage in any similar business practice of the Company while being in contact with the Company's current or former clients. Nor shall the Recipient solicit any client of the Company for the benefit of a third party that is engaged in a similar business to that of the Company.

Competitor(s)- Engage in business activity, whether paid or non-paid, with a competitor of the Company that provides a similar product or service.

Employees - Hire, work alongside, or partner with any current employees, sales staff, or former employees or sales staff of Company.

3. Time Period

Recipient warrants and guarantees for the one-year period following the termination of the Recipient's employment and/or business with the Company.

6. Confidential Information

As used herein "Confidential Information" shall mean any and all technical and non-technical information provided by the Company, including but not limited to: data or other proprietary information relating to products, inventions, plans, methods, processes, know-how, developmental or experimental work, computer programs, databases, authorship, customer lists (including the names, buying habits or practices of any clients), the names of vendors or suppliers, marketing methods, reports, analyses, business plans, financial information, statistical information, or any other subject matter pertaining to any business of the Company or any it's respective clients, consultants, or licensees that is disclosed to the Recipient under the terms of this Agreement.

8. Confidentiality

Recipient acknowledges that it will have access to the Company's Confidential Information and agrees that it shall not directly or indirectly divulge, disclose or communicate any of the Confidential Information to any third party, except as may be required in the

course of any formal business association or dealings with the Company and in any event, only with the prior written approval of the Company. The Recipient acknowledges that no license of the Confidential Information, by implication or otherwise, is granted to the Recipient by reason of this Agreement. Additionally, the Recipient acknowledges that it may only use the Confidential Information in connection with its business dealings with the Company and for no other purpose without the prior written consent of the Company. The Recipient further agrees that all Confidential Information, including without limitation any documents, files, reports, notebooks, samples, lists, correspondence, software, or other written or graphic records provided by the Company or produced using the Company's Confidential Information, will be held strictly confidential and returned upon request to the Company. The term of this Agreement will be ongoing as long as the Parties are working together in any formal capacity. The conditions of this Agreement shall survive the termination of this Agreement.

11. Remedies

Should the Recipient breach any of the provisions of this Agreement by unauthorized use, or by disclosure of the Confidential Information to any unauthorized third party to the Company's detriment or damage, the Recipient agrees to reimburse the Company for any loss or expense incurred by the Company as a result of such use or unauthorized disclosure or attempted disclosure, including without limitation court costs and reasonable attorney's fees incurred by the Company in enforcing the provisions hereof. Recipient further agrees that any unauthorized use of or disclosure of the Confidential Information will result in irreparable damage to the Company and that the Company shall be entitled to an award by any court of competent jurisdiction of a temporary restraining order and/or preliminary injunction against such unauthorized use or disclosure by the Recipient without the need to post a bond. Such remedies, however, shall not be deemed to be the exclusive remedies for any breach of this Agreement but shall be in addition to all other remedies available at law or equity.

Similar to the Non-Disclosure Agreements, breaches of the Non-Compete Agreements allow for injunctive relief in addition to all other relief available. Moreover, Defendant-Employees agreed that breaches of the Non-Compete Agreements will result in irreparable damage to Plaintiff. As such, Plaintiff should be awarded injunctive relief in addition to damages.

14.     Attached hereto are the draft agreements for Defendant William Thomas, which is identical to the agreements every employee of Plaintiff signs upon beginning employment. See *Exhibit 1–Employment Agreement, Arkansas Non-Disclosure Agreement, and Arkansas Non-Compete Agreement*. When Defendant-Employees left Plaintiff's place of business, the employee files containing their signed agreements were suddenly gone too.

15.     On August 5, 2021, while viewing information about one of Plaintiff's projects at Plaintiff's place of business, Defendant William Thomas received text messages on a personal iPad he used for Stone Works business from a number registered to Defendant Marty Hesch and Defendant Stone Concepts, LLC. The message indicated that Defendant Stone Concepts, LLC, would be delivering stone for Defendant William Thomas, an employee of Plaintiff, and Defendant Sims agreed to install it. When questioned regarding the text message, Defendant Thomas refused to answer any questions. When asked for his employer-provided phone, he deleted all information from the phone belonging to Plaintiff before returning it. Defendant Thomas left the building and ultimately quit on August 5, 2021. He has not returned two computers belonging to Plaintiff.

16.     Later investigation revealed that on or around August 5, 2021, Defendant Megan Sims downloaded and stole electronic information contained on Plaintiff's computer systems. This information includes but is not limited to the following: customer lists, credit applications, customer financial information, estimates, invoices, pricing information, and other proprietary information.

17.     Further investigation revealed that similar downloads occurred in January 2021 and May 2021. As office manager, Defendant Megan Sims was the only employee – other than the owners – with access to the stolen information.

18.   Upon information and belief, Defendant-Employees also removed or destroyed – without permission – information from the personnel files of all three former employees and other electronic information. Defendants' employment contracts, including their corresponding Employment Agreement, Arkansas Non-Disclosure Agreement, and Arkansas Non-Compete Agreements, were contained in the personnel files.

19.   On August 6, 2021, Defendant Randy Sims and Defendant Megan Sims quit their positions with Plaintiff.

20.   Randy Sims then threatened reputational harm to Plaintiff and its owners if not permitted to "leav[e] quietly" and noted he has "fifteen years of things that [he] has kept in [his] head" and "know[s] a lot of stuff."

21.   Upon Defendant Randy Sims and Defendant Megan Sims quitting, owners of Plaintiffs began investigating work performed by Defendant-Employees. It was confirmed that Defendant-Employees had for weeks or months been soliciting Stone Works customers' business, spreading misinformation about Plaintiff's future, and advising people in the community of their intentions and plans to leave Plaintiff and continue in the business with another company.

22.   Within a few days of quitting Plaintiff, the Defendant-Employees began publicly marketing themselves as associated with Stone Concepts, making calls to known customers of Plaintiff and encouraging people to contact them instead of Plaintiff. The Sims Defendants also visited the location for Defendant Stone Concepts, LLC, in Jonesboro, Arkansas. The week after quitting Plaintiff Defendants Randy Sims and Megan Sims visited a manufacturing facility for Centurion Stone.

23.   Defendant Randy Sims changed his Facebook profile to reflect that he works for

9

Defendant Stone Concepts, LLC, out of Jonesboro, Arkansas. He has since deleted this information from his Facebook page.

24. Defendant Randy Sims has undertaken efforts to brand and launch an office in central Arkansas for Defendant Stone Concepts, LLC.

25. Records reviewed thus far indicate Defendant Randy Sims had been in frequent communication with Stone Concepts, LLC as early as July 2, 2021. There was no legitimate Stone Works' business need for these communications.

22. Since the time when Defendant-Employees quit, they have contacted several vendors and customers of Plaintiff and indicated falsely that Plaintiff is closing or "in trouble." They have solicited business from Plaintiff's existing customers, and it appears in some cases have taken the business using the stolen information. Defendant Randy Sims has also improperly utilized Plaintiff's project photographs and other project-related information to market himself and Stone Concepts, falsely stating or implying that he alone was responsible for the progress or finished projects.

26. Numerous Plaintiff's customers have reported being solicited by the Sims Defendants, Defendant Thomas, and Defendant Stone Concepts, LLC. Customers have reported being provided false information about Stone Works from those Defendants. Customers have advised Plaintiff that they would no longer do business with Plaintiff due to the false information, and some have even discontinued business with Plaintiff due to lower bids submitted by the Defendants who prepared the original bid for Plaintiff or stole Plaintiff's bidding information in order to steal Plaintiff's customers.

27. On August 12, 2021, Plaintiff spoke with Ed Fraley, the Sales Representative for Centurion

Stone, of which Plaintiff was a distributor. Fraley advised he had a received a confidential document belonging to Plaintiff (a credit application from Plaintiff to another manufacturer and part of the confidential information illegally removed from Plaintiff's computer systems and files) which indicated to him that Plaintiff was utilizing Centurion Stone's competitor's products for some of Plaintiff's customer's projects. He indicated that due to his belief Plaintiff would be selling a competitor's product, Plaintiff would no longer be permitted to purchase Centurion Stone products from the factory and would in the future have to buy at a higher price from Stone Concepts, LLC, who buys Centurion Stone products for resale and who, as noted above, now employs the Sims Defendants. In the past, Defendant Fraley stated to representatives of Plaintiff and others that he would "smoke out" Plaintiff or other businesses who did not conduct business as he wished. Upon information and belief, Fraley has engaged in similar behavior towards other businesses.

28. Further, Plaintiff's current orders of Centurion Stone have been delayed for months, causing Plaintiff to be unable to finish its ongoing projects and unable to collect revenues related to these projects. After multiple inquiries about its pending orders, following the conversation between Plaintiff and Ed Fraley discussed above, Centurion advised Plaintiff that as a result of that call, Centurion will require up-front payment to fulfill all pending orders, which is not standard business practice and has caused Plaintiff damages.

29. Upon information and belief, Fraley has engaged in a pattern of conduct designed to injure or substantially lessen competition and to create a monopoly in commerce related to the manufacture and distribution of stone veneer and masonry.

30. As evidenced by Defendants' continued, unabated scheme, it is crystal clear that Defendants will stop at nothing to destroy Plaintiff's business for their own benefit.

11

31.   Plaintiff has contemporaneously filed an Ex-Parte Motion for Temporary Restraining Order with this Complaint.

## COUNT I – CONVERSION
## ALL DEFENDANTS

32.   Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

33.   Plaintiff was entitled to possess all property stolen by Defendant Randy Sims, Defendant Megan Sims, and Defendant William Thomas, and being used by all Defendants.

34.   All Defendants intentionally took and exercised control of Plaintiff's property, in direct violation of Plaintiff's rights. Further, Defendants have intentionally and maliciously converted Plaintiff's assets for their own use, benefit, and profit, including but not limited to furthering their own business interests.

35.   Plaintiff suffered and continues to suffer actual damages as a result of Defendants' conduct.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
## ALL DEFENDANTS

36.   Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

37.   Plaintiff maintained contractual relationships or business expectancies with various customers for whom it was expecting to provide stone veneer masonry services.

38.   Defendants had knowledge of these customers through their work for Plaintiff, through theft of Plaintiff's business information and through their competition with Plaintiff.

39.   Defendants intentionally and improperly diverted existing customers away from Plaintiff and induced or caused disruption of the business expectancies.

40.  Defendants' intentional and improper interference caused a disruption or termination of Plaintiff's contractual relationships or business expectancies causing and continuing to cause damages to Plaintiff.

## COUNT III – THEFT OF TRADE SECRETS
## ALL DEFENDANTS

41.  Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

42.   Plaintiff's confidential and proprietary information, including computer data, customer information, financial information, employee files, and more, are "trade secrets" because they constitute information which Plaintiff derives independent economic value from the information which is not generally known to or readily accessible by proper means or by other persons who could obtain economic value from its disclosure or use.

43.  Plaintiff has taken reasonable efforts to maintain secrecy of its trade secrets by limiting access to such information to only certain types of employees, and storing its digital files on private, password-protected servers. Plaintiff has compiled this information over the course of over fifteen years.

44.  With intent to convert a trade secret that is related to a product or service used in or intended for use in interstate commerce, to the economic benefit of Defendants and others, and knowing and intending that it would injure Plaintiff,  Defendants Sims and Defendant Thomas stole, took, or fraudulently and deceptively obtained the information, including computer data, financial information, customer information, design and bid information, employee files; Defendants Sims and Defendant Thomas without authorization duplicated, downloaded, uploaded, altered, destroyed, copied, transmitted, delivered, sent and conveyed the information; Defendants Fraley, Centurion, Stone Concepts, LLC and

Defendant Hesch received or possessed such information knowing it to have been stolen or appropriated, obtained or converted without authorization; and all Defendants conspired to do so.

45. The confidential and propriety information illegally taken is information used in interstate commerce by the Plaintiff. This information was willfully and maliciously misappropriated by the Defendants and, therefore, all Defendants are liable for damages caused by the misappropriation pursuant to the Federal Protection of Trade Secrets Act. See 18 U.S.C. § 1836.

46. This information derives independent economic value for the Plaintiff. The Plaintiff has devoted substantial time, effort, and resources in establishing such confidential and proprietary information.

47. Based on Defendants' conduct of misappropriating Plaintiff's trade secrets, we well as an existing, continuing threat of future misappropriation, Plaintiff seeks an immediate injunction to eliminate Plaintiff's ongoing damages and the commercial advantage wrongfully gained by Defendants from their misappropriation. See Ark. Code Ann. § 4-75-604.

48. In addition to injunctive relief, Plaintiff seeks damages, including unjust enrichment, for Defendants' theft of Plaintiff's trade secrets. See Ark. Code Ann. § 4-75-606.

49. Plaintiff also seeks its attorney's fees for Defendants' willful and malicious theft of trade secrets. See Ark. Code Ann. § 4-75-607.

### COUNT IV – BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY DEFENDANT RANDY SIMS, DEFENDANT MEGAN SIMS, DEFENDANT WILLIAM THOMAS

50.   Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

51.   As employees of Plaintiff, Defendant-Employees were entrusted with confidential and propriety information, thus they owed a duty of loyalty to, as well as a fiduciary duty to act in good faith and in the best interest of Plaintiff.

52.   Defendant-Employees breached these duties when they provided Plaintiff's confidential and proprietary information to the others, to improperly gain an unfair competitive advantage on the Plaintiff, including but not limited to stealing and utilizing Plaintiff's trade secrets and other information, soliciting Plaintiff's customers, and spreading false information about Plaintiff, among other acts complained of herein.

53.   But for Defendant-Employees' employment with Plaintiff, they would not have had access to the Plaintiff's confidential and proprietary information that they are now using to directly compete against Plaintiff.

54.   Defendants' conduct has damaged Plaintiff in an amount to be proven at trial.

55.   As a result of Defendants' conduct, Plaintiff is entitled to compensatory damages and its attorneys' fees.

## COUNT V - UNAUTHORIZED COMPUTER PROGRAM ACCESS AND THEFT ALL DEFENDANTS

56.   Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove. Plaintiff maintains years of business information, including confidential and proprietary information, on its password-protected private servers, which is accessible only to certain Plaintiff's employees for the business benefit of Plaintiff. This information is critical to the Plaintiff's business success.

57.   Defendants accessed the Plaintiff's private servers and databases through their Plaintiff employee logins to secretly take the Plaintiff's confidential and proprietary and other business information. This conduct was in furtherance of Defendants' plan to steal the Plaintiff's confidential and proprietary and other business information for their business benefit. Therefore, Defendants without authorization, accessed the Plaintiff's confidential and proprietary and other business information outside of the course and scope of their employment with the specific intent to harm the Plaintiff's business operations and customer relationships.

58.   The action taken by Defendants constitute felonious criminal conduct under federal and Arkansas law, including:

   (a)   Fraud and related activity in connection with computers. See 18 U.S.C. § 1030.
   (b)   Theft of property. See Ark. Code Ann.§ 5-36-103;
   (c)   Computer trespass. See Ark. Code Ann. § 5-41-104;
   (d)   Unlawful act regarding a computer. See Ark. Code Ann. § 5-41-202;
   (e)   Unlawful interference with access to computers or unlawful use or access to computers. See Ark. Code Ann.§ 5-41-203.

59.   By knowingly transferring, receiving, retaining, copying, and using the Plaintiff's stolen information without authorization from the Plaintiff, all Defendants have engaged in criminal conduct. See, e.g., Ark. Code Ann.§ 5-41-202.

60.   Based on Defendants' criminal conduct, Plaintiff is entitled to recover its attorneys' fees and costs pursuant to Arkansas Code Annotated § 16-118-107.

61.   Based on Defendants' conduct, Plaintiff is entitled to recover all of its damages, including loss of profits, and costs of suit. See Ark. Code Ann.§ 5-41-106.

## COUNT VI - UNAUTHORIZED ACCESS TO PROPERTY
## ALL DEFENDANTS

62. Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

63. The Defendant-Employees knowingly accessed the business property of their employer, Stone Works, in a nonpublic area without authorization to capture and remove the Plaintiff's data, records, and documentation to use the information contained in this data, records, and documentation to intentionally harm the Plaintiff. See Ark. Code Ann.§ 16-118-113(a)-(c)(l).

64. All other Defendants are jointly liable by knowingly directing or assisting the Defendant-Employees. See Ark. Code Ann. § 16-118-l 13(d).

65. Based on Defendants' conduct, Plaintiff is entitled to equitable relief, compensatory damages, its costs, and attorneys' fees. See Ark. Code Ann. § 16-118-l13(e)(l)-(3). If compensatory damages cannot be quantified, then Plaintiff is entitled to recover up to $5,000 per day that each Defendant engaged in conduct violating Arkansas Code Annotated § 16-118-113(b), an amount to be proven at trial.   See Ark. Code Ann. § 16-118- l 13(e)(4).

## COUNT VII – CIVIL CONSPIRACY
## ALL DEFENDANTS

66. Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

67. All Defendants knowingly entered into a conspiracy to access and steal Plaintiff's property, misuse Plaintiff's property; interfere with Plaintiff's contracts and business expectancies; steal, misappropriate or misuse Plaintiff trade secrets; access, steal, and misuse computer programs and data, including confidential and proprietary and other business information; to breach employment and non-compete agreements; to violate the Arkansas Deceptive

Trade Practices Act; and engage in intentional and malicious conduct to harm and ultimately destroy Plaintiff's business.

68. All Defendants have committed numerous overt acts in furtherance of the conspiracy set forth above.

69. Defendants' conspiracy caused and continues to cause damage to Plaintiff.

<u>**COUNT VIII – BREACH OF EMPLOYMENT AGREEMENT, NON-DISCLOSURE AGREEMENT, AND NON-COMPETE AGREEMENT DEFENDANT RANDY SIMS, DEFENDANT MEGAN SIMS, DEFENDANT WILLIAM THOMAS**</u>

70. Plaintiff incorporates and reasserts all preceding paragraphs of the Complaint as stated hereinabove.

71. Plaintiff and Defendant Randy Sims, Defendant Megan Sims, and Defendant Williams Thomas entered into valid employment agreements and non-compete agreements.

72. The agreements, in part, prohibited Defendants from competing with Plaintiffs, soliciting or servicing clients of the Plaintiff, or interfering with Plaintiffs' business; prohibited Defendants from engaging in any other business activities during the employment; prohibited Defendants from revealing confidential information or trade secrets, or threatening to reveal this information; and entitling Plaintiffs to an injunctions from said disclosure or from rendering any services to any entity to whom the information has been or is threatened to be disclosed; required Defendants to return all originals and copies of Plaintiff's information; prohibited Defendants from controlling, consulting or being employed by any similar business for a period of one year.

73. Defendants repeatedly breached the provisions of the agreements set forth above.

74. Plaintiff performed all obligations under the contract.

75. Defendants are liable for breach of contract.

76.     Plaintiff suffered and continue to suffer actual damages as a result of the breaches.

## COUNT IX –VIOLATION OF ARKANSAS
## DECEPTIVE TRADE PRACTICES ACT

77.     All Defendants engaged in unconscionable, false, and deceptive acts and business practices,

including but not limited the use of Plaintiff's confidential and propriety information, trade

secrets and property for the benefit of Defendants without the authorization of the Plaintiff;

Defendants' intentional, improper and willful interference with Plaintiff's contractual

relationships and business expectancies; Defendants disparaging the services and business

of Plaintiff by false and misleading representations of fact to third parties; and knowingly

facilitating, assisting intermediating and otherwise aiding the operation and continuance of

the acts and practices outlined herein.

78.     The acts and omissions of all Defendants in engaging in unconscionable, false and deceptive

acts and business practices were made knowingly and willfully.

79.     By virtue of the foregoing events and actions undertaken by said Defendants have caused,

and will cause in the future, substantial, immediate, and irreparable harm to Plaintiff, its

business, and its operations through these Defendants' conversion and misappropriation.

Unless these Defendants are temporarily, preliminary and permanently enjoined from

committing and continuing to commit the foregoing conduct, Plaintiff will be irreparably

harmed.

80.     The above referenced Defendants knew or ought to have known, in light of the surrounding

circumstances, that their conduct would naturally and probably result in injury or damage

and that they continued the conduct with malice or in reckless disregard of the

consequences, from which malice may be inferred; or the referenced Defendants pursued a

course of conduct for the purpose of causing injury or damage

81.    As a direct and proximate result of these Defendants' actions, Plaintiff has and will continue

to suffer financial and other losses which entitle Plaintiff to an award of compensatory and

punitive damages, as well as attorney's fees pursuant to Ark. Code Ann. § 4- 88-113.

### COUNT XI – UNJUST ENRICHMENT
### ALL DEFENDANTS

82.    Plaintiff invested time, energy, and resources in Defendants Randy Sims, Megan Sims, and

William Thomas to further the business of Plaintiff, which is evident through the training,

support, payment of salary, permitting said Defendants use of Plaintiff's technology,

information, expertise, and resources, and more for Defendants Randy Sims, Megan Sims,

and William Thomas to grow as employees of Plaintiff.

83.    Defendants have used Plaintiff's confidential and proprietary information to further their

own personal interest and the interests of all Defendants, which are improperly competing

with Plaintiff.

### COUNT XII – PUNITIVE DAMAGES
### ALL DEFENDANTS

84.    Defendants have acted maliciously with the intent to harm Plaintiff, or with conscious

indifference to the consequences of their actions. Consequently, Plaintiff is entitled to

recover punitive damages from Defendants in an amount to be determined at trial to deter

such conduct by Defendants in the future.

### RELIEF REQUESTED

85.    Plaintiff seeks a temporary and preliminary injunction to stop the Defendants' brazen,

illegal, and damaging behavior.

86. Plaintiff seeks a temporary and preliminary injunction prohibiting Defendants from continuing to solicit Plaintiff's customers, misrepresent the status of Plaintiff's business or use Plaintiff's propriety information for the benefit of anyone other than Plaintiff.

87. Plaintiff seeks a temporary and preliminary injunction from this Court prohibiting Defendants from engaging in activities that breaches their employment agreements and non-compete agreements, interferes with their ongoing business, or misuses property that was stolen by Defendants.

88. Plaintiff further seeks a temporary and preliminary injunction from this Court prohibiting Defendants from engaging in activities that lessen competition, tend to create a monopoly, or injure, destroy or prevent competition, including conditioning sales and fixing its prices and conditions of sales on the customers' use or dealing in the goods, merchandise and supplies of competitors and discriminating in price between purchases of like commodities.

89. Plaintiff seeks the return of Plaintiff's property along with all duplicates that may exist in the possession of any defendant or that may have been provided to third parties.

90. Plaintiff seeks monetary damages in excess of the federal jurisdictional limits.

91. Plaintiff seeks treble damages, costs and fees, with interest.

92. Plaintiff seeks punitive damages.

93. Plaintiff requests a trial by jury.

## **RESERVATION OF RIGHTS**

94. Plaintiffs reserve the right to amend this Complaint and add additional parties and/or causes of action as necessary and permitted by the Arkansas Rules of Civil Procedure.

WHEREFORE, Plaintiff respectfully requests this honorable Court grant preliminary and temporary injunctive relief; for damages associated with the causes of action set forth above; for

its costs and attorneys' fees associated with litigating this matter; and for all other relief which it

may be entitled.

> Respectfully submitted,
>
> STONE WORKS, LLC

BY:    /s/ Timothy J. Giattina
                Timothy J. Giattina
                Hodge Calhoun Giattina, PLLC
                711 W. 3rd Street
                Little Rock, Arkansas 72201
                Ph: 501.404.4874
                Fax: 501.404.4865
                tim@hcglawoffice.com
                Attorney for Plaintiffs

> and
>
> /s/ Erin Cassinelli
> ABN 2005118
> erin@lcarklaw.com
> LASSITER & CASSINELLI
> 300 S. Spring St., Suite 800
> Little Rock, AR 72201
> (501) 370-9300

IMPORTANT NOTICE TO ALL DEFENDANTS CONCERNING YOUR DUTY TO PRESERVE ALL MATERIALS RELATING TO THIS LITIGATION YOU ARE HEREBY PLACED ON FORMAL NOTICE OF YOUR AFFIRMATIVE AND ONGOING DUTY TO PRESERVE AND TAKE ACTIONS NOT TO ALTER, RECONFIGURE, DELETE OR DESTROY, ANY AND ALL MATERIALS THAT IN ANY MANNER RELATE TO THIS LITIGATION WHETHER CREATED IN THE PAST OR TO BE CREATED IN THE FUTURE. THIS DUTY TO PRESERVE INCLUDES BUT IS NOT LIMITED TO ANY AND ALL HARD-COPY, PRINTED, WRITTEN, COPIED, OR DUPLICATED MATERIALS, INCLUDING ANY DRAFTS OF SAME, PREPARED, MAINTAINED AND STORED IN ANY FORMAT, INCLUDING WITHOUT LIMITATION HARD COPY, PRINTED OR ELECTRONIC FORMAT. YOU ARE INSTRUCTED TO SUSPEND ANY DELETION PROCESSES INCLUDING ANY AUTODELETE PROCESSES.

THIS DUTY TO PRESERVE INCLUDES BUT IS NOT LIMITED TO PERSONAL AND BUSINESS HARD-COPY, PRINT AND ELECTRONICALLY CREATED AND STORED INFORMATION, RECORDS AND FILES, INCLUDING BUT NOT LIMITED TO THE FOLLOWING:

The documents and records subject to this Notice include both hard or paper documents or writings, and electronically stored documents and information ("ESI"). In applying this Notice, it is imperative to understand that it includes all ESI of any kind and that it applies to every kind of device in or on which ESI may be stored or housed. It is also imperative to understand that this Notice precludes the electronic deletion, alteration or reconfiguration in any way or manner of ESI.

Material covered includes, without limitation, documents, records, files, and information in Word, WordPerfect, Excel, PowerPoint, Access, Outlook and other commonly used software. Material covered includes documents that were generated, including electronic files. In its electronic aspect, this includes documents received in electronic format from other sources and documents downloaded from the Internet in whatever platform they were transferred. Materials covered include email; email attachments, including links; Blackberry (or similar devices) transmissions; other data stored on Blackberries, Palm Pilots, PDAs or other similar devices; and Instant, Text and Twitter messages. It includes photographs, voicemail and other sound recordings. Materials covered include, without limitation, active online data, near-line storage of data on removable media, offline storage/archive data and backup tapes. Importantly, materials covered include the metadata stored in text and other messages and transmissions, which, under this Notice, should not be deleted, altered or reconfigured.

The devices covered by this Notice include main frame computers, individual Personal Computers, servers, CDs, discs, tapes, backup tapes, laptop computers, personal laptop computers, computer notebooks, Blackberries, Palm Pilots, PDAs and other forms of Personal Information Managers, cell phones, iPods and any other device on which data may be stored electronically. Importantly, materials covered include all documents and records that currently exist, and all that may be created or received in the future, until such time as this Notice is finally released, in writing, by Plaintiff. Finally, materials covered include identical copies of documents or information existing

or residing anywhere in your possession or control, or in the possession or control of others to whom you have control over.

Emails and Texts subject to this Notice include emails and/or texts you sent, received, or on which you were copied (even though you believe that identical copies may exist on the computers of other individuals); emails or texts you "deleted", but which have not been deleted from your "Deleted Items" folder in Microsoft Outlook or similar programs; and emails or texts that are stored on any backup tapes, hard drives, CDs or other storage media. In order to preserve materials covered that now exist in your Deleted Items folder and those placed there in the future, you should configure your computer or device so that it does not automatically delete items in your "Deleted Items" folder when you exit Outlook or similar programs. If there is any possibility that an email, text or other document may be a material covered subject to preservation hereunder, do not delete, destroy, alter, reconfigure or relocate it.

A VIOLATION OF THIS NOTICE CAN RESULT IN A CLAIM OF SPOLIATION OF EVIDENCE.

## **VERIFICATION**

I, Troy Rhodes, do hereby state on oath that the above is true and correct to the best of my knowledge, information, and belief.

Troy Rhodes
Owner, Stone Works, LLC

Subscribed and sworn to before me this 10 day of September, 2021.

Notary Public

My commission expires: 01-21-2025.

1