ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Sep-10 14:37:51
60CV-21-5660
C06D12 : 13 Pages

# UNIFORM COVER PAGE
[To be used when required by Administrative Order No. 2 (g)*]

COURT: __Circuit__ COURT OF __Pulaski__ COUNTY

Docket/Case Number: _____

CASE NAME:
PLAINTIFF/
PETITIONER: __Stone Works, LLC__

DEFENDANT/
RESPONDENT: __Randy Sims, et. al.__

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): __Exhibit 1 - Employment Agreements__

*Administrative Order No 2.
   (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
   (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

# EMPLOYMENT AGREEMENT

Employment Agreement, between Stone Works LLC (the "Company") and William Thomas (the "Employee").

1. For good consideration, the Company employs the Employee on the following terms and conditions.

2. **Term of Employment**. Subject to the provisions for termination set forth below this agreement will begin on September 23, 2019, unless sooner terminated.

3. **Wages and Benefits**.

> **Non-Recoverable Draw:** will be paid a duration of the initial 12 weeks employment in weekly installments of $500.00; which is subject to deductions for taxes and other withholdings as required by law or the policies of the company. If earned commissions during this period are less than the guarantee paid during this period, you shall not be required to repay the guarantee and the balance shall be eliminated.
>
> **Recoverable Draw:** will be paid thereafter the initial 12 weeks employment in weekly installments of $500.00; which is subject to deductions for taxes and other withholdings as required by law or the policies of the company.
>
> - Commissions earned in excess of the monthly draw payments will be payable to you on a month lag, one month following the month earned, in the final paycheck of each month.
> - If earned commissions during this period are less than the draw amount, the draw amount will be paid. In this case, future commissions will be reduced until the full amount is recovered.
>
> **Commission Structure:** the commission schedule is attached and guaranteed for a period of one year. Changes to the commission structure with the changing needs of the business may occur beyond the first year.

**Insurance:** Company shall pay ½ of employee portion of health insurance. Remainder due for employee and/or dependents elected to be held out of wages at regular payroll periods. Dental and/or vision insurance is available for employee election.

4. **Duties and Position**. The Company hires the Employee in the capacity of Outside Sales Representative. The Employee's duties may be reasonably modified at the Company's discretion from time to time with reasonable notice made to Employee.

5. **Employee to Devote Full Time to Company**. The Employee will devote full time, attention, and energies to the business of the Company, and, during this employment, will not engage in any other business activity, regardless of whether such activity is pursued for profit, gain, or other pecuniary advantage. Employee is not prohibited from making personal investments in any other businesses provided those investments do not require active involvement in the operation of said companies.

6. **Confidentiality of Proprietary Information**. Employee agrees, during or after the term of this employment, not to reveal confidential information, or trade secrets to any person, firm, corporation, or entity. Should Employee reveal or threaten to reveal this information, the Company shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed, the right to secure an injunction is not exclusive, and the Company may pursue any other remedies it has against the Employee for a breach or threatened breach of this condition, including the recovery of damages from the Employee.

7. **Non-Compete Agreement:** The Arkansas Non-Compete Agreement, provided, must be signed before the employee can begin employment.

8. **Reimbursement of Expenses**. The Employee may need to incur reasonable expenses for furthering the Company's business, on a case by case basis and with prior approval by management. The Company shall reimburse Employee for all business expenses after the Employee presents an itemized account of expenditures, pursuant to Company policy.

9. **Car/Phone/Travel Expenses:** The employee is responsible for maintaining dependable transportation to use in the carrying out job duties of Outside Sales Representative. Company will provide $75.00 per week allowance to assist in costs associated with the employee's use of personal vehicle, pending review/approval of the employee's mileage report; OR, a fuel card to be provided. Company cell phone will be provided.

10. **Personal Time Off (PTO)**. The Employee shall be entitled to personal time off within the guidelines of company policy. Personal time off can be used at the discretion of employee for illness, vacation or any other personal time needed, with reasonable prior notice and agreement of employer. Company holidays include New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Day.

11. **Disability**. In the event that the Employee cannot perform the duties because of illness or incapacity for a period of more than the PTO allowed, the minimum monthly draw will not be paid. Full commissions due will be paid at regularly scheduled commission cycle. The Employee's full compensation structure will be reinstated upon return to work. However, if the Employee is absent from work for any reason for a continuous period of over 30 days, the Company may terminate employment, and the Company's obligations under this agreement will cease on that date.

12. **Return of Company Information and Property**. Upon termination of my employment, the employee shall disclose and provide to the Company all originals and all copies which are in their possession or under their control;; including, but not limited to, all notes, memoranda, records, reports, drawings, blueprints, codes, programs, software, manuals, materials and data of any nature which are the property of Company, and every item in their possession or under my control that is property of the Company or contains Confidential Company information.

13. **Termination of Agreement**. Without cause, the Company may terminate this agreement at any time upon reasonable written notice to the Employee. If the Company requests, the Employee may continue to perform his/her duties and will be paid his/her

regular salary up to the date of termination. Employee will be eligible to receive the total unused PTO acquired, less insurance, taxes, social security and/or any other items required to be withheld.

Without cause, the Employee may terminate employment upon reasonable notice to the Company. Employee may be requested to perform his or her duties and will be paid the regular salary to date of termination but shall not receive any severance allowance.

14. **Restriction on Post Employment Compensation**. For a period of one year after the end of employment, the Employee shall not control, consult to or be employed by any business similar to that conducted by the company, either by soliciting any of its accounts or by operating within Employer's general trading area.

15. **Assistance in Litigation**. Employee shall upon reasonable notice, furnish such information and proper assistance to the Company as it may reasonably require in connection with any litigation in which it is, or may become, a party either during or after employment.

16. **Probationary Period.** Notwithstanding any other termination provision of this agreement, the initial 90 days of employment will be regarded as a probationary period. During this period, either party may terminate the employment relationship on a basis of "no-fault".

Signed this _____ day of _____ 20_____.

William Thomas:

_____ Employee's Signature

_____ Printed Name

Stone Works LLC:

_____ Company Representative's Signature

_____ Printed Name

# ARKANSAS NON-DISCLOSURE AGREEMENT

BETWEEN

Stone Works LLC
("Company")

PO Box 13431, Maumelle, AR 72113
(Mailing Address)

AND

William W. Thomas
("Recipient")

1205 Anemone Drive, North Little Rock, AR 72117
(Mailing Address)

---

Effective Date of Agreement: 9-23-2019

THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (this "Agreement") is made and entered into as of the Effective Date of Agreement set forth above by and between Company and Recipient.

WITNESSETH:

**WHEREAS**, the parties hereto desire to have discussions related to, and may enter into, one or more business transactions (the "Subject Matter");

**WHEREAS**, it is contemplated that such discussions and any business transactions entered into in connection therewith will require the disclosure by Company to Recipient of Confidential Information (as hereinafter defined);

**WHEREAS**, both parties recognize the value of the Confidential Information and that it is in their mutual best interests to maintain the confidential, proprietary and secret nature of the Confidential Information.

**NOW, THEREFORE**, for and in consideration of the above premises, and in further consideration of the mutual covenants and promises contained herein and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **CONFIDENTIAL INFORMATION**. Confidential Information shall include, but not be limited to documents, records, information and data (whether verbal, electronic or written), drawings, models, apparatus, sketches, designs, schedules, product plans, marketing plans, technical procedures, manufacturing processes, analyses, compilations, studies, software, prototypes, samples, formulas, methodologies, formulations, patent applications, know-how, experimental

Copyright © 2018 by NonDisclosureAgreements.com

results, specifications and other business information, relating to Company's business, assets, operations or contracts, furnished to Recipient and/or Recipient's affiliates, employees, officers, owners, agents, consultants or representatives, in the course of their work contemplated in this Agreement, regardless of whether such Confidential Information has been expressly designated as confidential or proprietary. Confidential Information also includes any and all analyses, compilations, work product, studies and other data or material prepared by or in the possession or control of the Recipient, which contain, include, refer to or otherwise reflect or are generated from any Confidential Information. Confidential Information may be provided in written, oral, electronic or other form. Recipient acknowledges that no representation or warranty, express or implied, has been or is made by or on behalf of Company as to the accuracy or completeness of any of the Confidential information furnished to the Recipient.

2. **FORM OF DISCLOSURE**. Confidential Information may be oral, visual, or by demonstration, or in some other form not permanently recorded, and shall be considered Confidential Information regardless of whether such Confidential Information has been expressly designated as confidential or proprietary.

3. **PERIOD OF CONFIDENTIALITY AND NON-USE**. Recipient (including its affiliates, employees, agents and consultants) shall maintain in strict confidence for a period of five (5) years from the Effective Date and not disclose any Confidential Information it receives from Company to any third party or use the Confidential Information for its own or any other party's benefit, except in furtherance of its obligations to Company pursuant to any business transaction it may enter into with Company. Recipient shall use, as a minimum, the same degree of care to avoid disclosure or use of the Confidential Information as it employs with respect to its own confidential, proprietary and secret information of like importance, but in any case using no less than a reasonable degree of care. Recipient shall limit access to all Confidential Information to only those of Recipient's personnel, agents and representatives who need to know such information for carrying out Recipient's obligations to Company pursuant to any business transaction it may enter into with Company and the Confidential Information will be used only for carrying out Recipient's obligations to Company pursuant to any business transaction it may enter into with Company. Recipient shall insure that its affiliates, employees, officers, directors, owners, agents, consultants, and representatives who are given access to the Confidential Information by or on behalf of Recipient shall be bound by and shall comply with the terms of this Agreement.

4. **EXCLUSIONS**. Information shall not be deemed Confidential Information, and Recipient shall have no obligation of confidentiality or restriction against use with respect to any information which:

> 4.1. was known, in the possession of and documented by Recipient through no wrongful act of Recipient prior to Company's disclosure of such information to Recipient; or
>
> 4.2. is or becomes publicly known through no wrongful act of Recipient and/or through no breach of any obligation to Company; or
>
> 4.3. is rightfully received from a third party who is not subject to restrictions on the use and disclosure of such information in favor of Company; or
>
> 4.4. is approved for release by written authorization from Company; provided that, unless notice of said prior knowledge and possession or receipt from a third party is given to Company within thirty (30) days of receipt of the information from Company or from a third party, respectively, it shall be conclusively presumed that the said

Copyright © 2018 by NonDisclosureAgreements.com

information was not previously in the Recipient's knowledge and possession or received from a third party.

**5. DISCLOSURES REQUIRED BY LAW.** In the event Recipient is requested or required by a government or court order, or similar process, to disclose any Confidential Information supplied to it by Company, Recipient shall provide Company with prompt notice of such request so that Company may seek an appropriate protective order and/or waive Recipient's compliance with the provisions of this Agreement.

**6. INDEMNIFICATION.** Recipient shall reimburse, indemnify and hold harmless Company and its affiliates, owners, employees, officers, directors, agents and representatives from any damage, loss, penalty, cost or expense incurred by Company as a result of or in connection with the use or disclosure of the Confidential Information contrary to the terms of this Agreement by Recipient or its affiliates, employees, directors, officers, owners, consultants, agents or representatives or any others to whom such Confidential Information has been disclosed by any such persons or entities. The term "affiliates" as used in this Agreement shall mean any persons, corporations, partnerships, limited liability companies, or other business entities, which directly or indirectly control, are controlled by, or are in common control with such party to this Agreement. As used herein, the term "control" shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of securities, by contract or otherwise).

**7. NO PUBLIC COMMENT.** Recipient shall not directly or indirectly make any public comment, statement, or communication with respect to, or otherwise disclose or permit the disclosure to any third party of any Confidential Information or of any matter relating to the Subject Matter or purpose or any transactions contemplated by the parties in connection therewith, without the prior written consent of Company.

**8. NOTICE OF UNAUTHORIZED USE OR DISCLOSURE.** Recipient shall notify Company immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by Recipient or any third party, and will cooperate with Company in every reasonable way to help Company regain possession of the Confidential Information and prevent its further unauthorized use or disclosure.

**9. OWNERSHIP AND RETURN OF CONFIDENTIAL INFORMATION.** All Confidential Information disclosed to Recipient shall be and remain the property of Company. Upon Company's written request, Recipient shall promptly return all Confidential Information (including all originals, copies, reproductions and summaries of such Confidential Information), or certify its destruction in writing, and keep the same confidential and secret in accordance with this Agreement.

**10. NO LICENSE.** Nothing contained in this Agreement shall be construed as granting or conferring to Recipient any rights or license or otherwise, either expressly or by implication, in or to any Confidential Information disclosed by Company to Recipient as a result of this Agreement, including, without limitation, rights or license under any present or future patent, patent application, copyright, trademark, service mark, trade secret or other proprietary information owned, licensed or controlled by Company.

**11. SURVIVAL.** Recipient's obligations of non-disclosure pursuant to the terms of this Agreement shall survive until all Confidential Information has been returned to Company or the destruction thereof has been certified to Company in writing.

Copyright © 2018 by NonDisclosureAgreements.com

12. **RELATIONSHIP**. This Agreement shall not be construed as a joint venture, pooling arrangement, partnership, teaming effort or agency arrangement. The Recipient, unless otherwise stated in a separate agreement, shall have no ownership interest whatsoever in the Confidential Information being handed over to them.

13. **NO WAIVER**. Neither party waives any rights in invention or development lawfully possessed by it at the time of signing this Agreement. In addition, this Agreement does not imply any waiver of any rights or action under the patent, trademark, copyright, trade secret, unfair competition, fair trade or related laws. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof.

14. **BINDING AGREEMENT**. This Agreement shall be binding upon Recipient and its subsidiaries, successors, assigns, legal representatives, and all corporations controlling Recipient or controlled by Recipient and shall inure to the benefit of Company and its subsidiaries, successors, assigns, legal representatives, and all corporations controlling Company or controlled by Company.

15. **INJUNCTIVE RELIEF**. Recipient understands and agrees that any use or dissemination of Confidential Information in violation of this Agreement will cause Company irreparable harm, and that monetary damages may not be a sufficient remedy for unauthorized use or disclosure of Confidential Information, and that Company may be left with no adequate remedy at law; therefore, Company shall be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. Such remedies shall not be deemed to be the exclusive remedy for any breach of this Agreement but shall be in addition to all other remedies available at law or in equity.

16. **PREVAILING PARTY**. If either party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses.

17. **GOVERNING LAW**. This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas without regard to principles of conflict or choice of laws, and Recipient consents to venue and jurisdiction in and by the state and federal courts in the jurisdiction of the Company.

18. **ASSIGNMENT**. This Agreement may not be assigned by Recipient without the prior written consent of Company.

19. **ENTIRE AGREEMENT**. This Agreement contains the entire understanding between the parties relative to the protection of Confidential Information and supersedes all prior and collateral communications, reports, and understanding between the parties in respect thereto. No change, modification, alteration or addition to any provision shall be binding unless it is in writing and signed by an authorized representative of both parties.

20. **SEVERABILITY**. If a court of competent jurisdiction makes a final determination that any provision of this Agreement (or any portion thereof) is invalid, illegal or unenforceable for any reason whatsoever, and all rights to appeal the determination have been exhausted or the period of time during which any appeal of the determination may be perfected has been exhausted, (i) the validity, legality, and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby; and (ii) to the fullest extent

Copyright © 2018 by NonDisclosureAgreements.com

possible, the provisions of this Agreement shall be construed so as to give effect to the intent manifested by the provisions held invalid, illegal or unenforceable.

21. **HEADINGS**. The headings in this Agreement are for reference purposes only and shall not limit or otherwise affect the meaning of the provisions.

22. **COUNTERPARTS**. This Agreement may be executed in one or more counterparts including signing a facsimile copy. Each counterpart shall be deemed an original and all counterparts together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have caused their duly authorized representatives to execute this Agreement as of the dates written below.

RECIPIENT:

**Recipient's Signature** _____   Date: _____

Print Name: _____

COMPANY:

**Representative's Signature** _____   Date: _____

Print Name: _____

Copyright © 2018 by NonDisclosureAgreements.com

# ARKANSAS NON-COMPETE AGREEMENT

1. **Purpose**

This agreement, when countersigned below, shall constitute an agreement regarding certain confidential and proprietary information and trade secrets ("Confidential Information") relating to the business of Stone Works LLC hereinafter referred to as the "Company" and William W. Thomas hereinafter referred to as the "Recipient" (collectively referred to as the "Parties"), as of the date executed by the Company (the "Effective Date").

Recipient shall strictly maintain the confidentiality of the Proprietary Information. Proprietary information may be shared between the Parties for use in scoping, estimating, and completing projects as well as for the everyday business practices for the Company and its clients/customers.

2. **Non-Compete/Disclosure**

During the tenure of the Recipient with the Company and the Time Period stated in Section 3 the Recipient shall not:

**Business Practices** - Provide the same or similar industry products, services, or engage in any other way representation of any other business of a similar nature to the business of the Company without written consent. It is understood that the Recipient will be representing the Company exclusively during their tenure unless written notice has been provided from either of the Parties.

**Clients/Customers** - Directly or indirectly engage in any similar business practice of the Company while being in contact with the Company's current or former clients. Nor shall the Recipient solicit any client of the Company for the benefit of a third party that is engaged in a similar business to that of the Company.

**Competitor(s)** - Engage in business activity, whether paid or non-paid, with a competitor of the Company that provides a similar product or service.

**Employees** - Hire, work alongside, or partner with any current employees, sales staff, or former employees or sales staff of Company.

3. **Time Period**

Recipient warrants and guarantees for the one-year period following the termination of the Recipient's employment and/or business with the Company.

## 4. Purchase Option

The Company does not allow the Recipient to be released of liability from this agreement for any monetary amount or reason whatsoever.

## 5. Jurisdiction

The jurisdiction of this agreement shall cover the areas of Arkansas.

## 6. Confidential Information

As used herein "Confidential Information" shall mean any and all technical and non-technical information provided by the Company, including but not limited to: data or other proprietary information relating to products, inventions, plans, methods, processes, know-how, developmental or experimental work, computer programs, databases, authorship, customer lists (including the names, buying habits or practices of any clients), the names of vendors or suppliers, marketing methods, reports, analyses, business plans, financial information, statistical information, or any other subject matter pertaining to any business of the Company or any it's respective clients, consultants, or licensees that is disclosed to the Recipient under the terms of this Agreement.

## 7. Permitted Disclosure

Confidential Information does not include information which:

(i) Has become generally known to the public through no wrongful act by the Recipient;
(ii) Has been rightfully received by Recipient from a third party without restriction on disclosure and without breach of an obligation of confidentiality running either directly or indirectly to the Recipient;
(iii) Has been approved for release to the general public by written authorization of the Company;
(iv) Has been disclosed pursuant to the requirement of a governmental agency or a court of law without similar restrictions or other protections against public disclosure; or,
(v) Has been independently developed by the Recipient without use, directly or indirectly of the Company's Confidential Information.

## 8. Confidentiality

Recipient acknowledges that it will have access to the Company's Confidential Information and agrees that it shall not directly or indirectly divulge, disclose or communicate any of the Confidential Information to any third party, except as may be required in the course of any formal business association or dealings with the Company and in any event, only with the prior written approval of the Company. The Recipient acknowledges that no license of the Confidential Information, by implication or otherwise, is granted to the Recipient by reason of this Agreement. Additionally, the Recipient acknowledges that it may only use the

Confidential Information in connection with its business dealings with the Company and for no other purpose without the prior written consent of the Company. The Recipient further agrees that all Confidential Information, including without limitation any documents, files, reports, notebooks, samples, lists, correspondence, software, or other written or graphic records provided by the Company or produced using the Company's Confidential Information, will be held strictly confidential and returned upon request to the Company. The term of this Agreement will be ongoing as long as the Parties are working together in any formal capacity. The conditions of this Agreement shall survive the termination of this Agreement.

### 9. Consultants and Employees Bound

Recipient agrees to disclose the Confidential Information to any agents, affiliates, directors, officers or any other employees (collectively, the "Employees") solely on a need-to-know basis and represents that such Employees have signed appropriate non-disclosure agreements or taken appropriate measures imposing on such Employees a duty to third parties (1) to hold any third party proprietary information received by such Employees in the strictest confidence, (2) not to disclose such third party Confidential Information to any other third party, and (3) not to use such Confidential Information for the benefit of anyone other than to whom it belongs, without the prior express written authorization of the Company.

### 10. Return of Materials

Upon termination or expiration of the Agreement, or upon written request of the Company, the Recipient shall promptly return to the Company all documents and other tangible materials representing the Company's Confidential Information and all copies thereof. The Company shall notify immediately the Recipient upon discovery of any loss or unauthorized disclosure of the Confidential Information.

### 11. Remedies

Should the Recipient breach any of the provisions of this Agreement by unauthorized use, or by disclosure of the Confidential Information to any unauthorized third party to the Company's detriment or damage, the Recipient agrees to reimburse the Company for any loss or expense incurred by the Company as a result of such use or unauthorized disclosure or attempted disclosure, including without limitation court costs and reasonable attorney's fees incurred by the Company in enforcing the provisions hereof. Recipient further agrees that any unauthorized use of or disclosure of the Confidential Information will result in irreparable damage to the Company and that the Company shall be entitled to an award by any court of competent jurisdiction of a temporary restraining order and/or preliminary injunction against such unauthorized use or disclosure by the Recipient without the need to post a bond. Such remedies, however, shall not be deemed to be the exclusive remedies for any breach of this Agreement but shall be in addition to all other remedies available at law or equity.

## 12. Choice of Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas without reference to its conflicts of laws principles. Any disputes arising from or related to the subject matter of this Agreement shall be heard in a court of appropriate jurisdiction of the Company's principal office and the parties hereby consent to the personal jurisdiction and venue of these courts. If any provisions of this Agreement or its applications is held to be invalid, illegal or unenforceable in any respect, the validity, legality or enforceability of any other provisions and applications herein shall not in any way be affected or impaired.

## 13. Entire Agreement

This Agreement represents the entire agreement of the parties and may only be modified by signature by both parties hereto.

**In Witness Whereof,** the parties hereto have agreed and signed this Non-Compete/Non-Disclosure Agreement to be on the ___ day of _____, 20___.

| **The Company** | **Recipient** |
|---|---|
| _____ | _____ |
| Signature | Signature |
| _____ | _____ |
| Print Name and Title | Print Name |
| _____ | _____ |
| Date | Date |