## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | | |
|---|---|---|---|
| STONE WORKS, LLC, | | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| | | ) | |
| v. | | ) | Case No. 4:21-CV-941 |
| | | ) | |
| RANDY SIMS, *et al.*, | | ) | |
| | | ) | |
| | Defendants. | ) | |

---

### DEFENDANT EDWARD FRALEY'S BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

---

*Respectfully submitted,*

Jason C. Smith AR 2006103
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Mo. 65804
Telephone:  417-888-1000
Facsimile:   417-881-8035
jcsmith@spencerfane.com

and

Harry E. "Bud" Cummins AR 89010
The Law Offices of Bud Cummins
1818 N. Taylor St. #301
Little Rock, AR 72207
bud@budcumminslaw.com

*Attorneys for Defendant Edward Fraley*

WA 11095057.5

Case 4:21-cv-00941-JM   Document 26   Filed 03/15/22   Page 2 of 29

## I.    BACKGROUND

This case primarily concerns claims pertaining to Defendants Randy Sims, Megan Sims, and William Thomas ("the Defendant-Employees")'s alleged violations of their employment agreements with Plaintiff Stone Works, LLC ("Plaintiff"), and those same Defendant-Employees' alleged misappropriation of property and information belonging to Plaintiff. This Motion is asserted solely on behalf of Defendant Fraley, who never worked for Plaintiff and never misappropriated any information or property belonging to Plaintiff. The claims and allegations against Defendant Fraley relate to information that he was provided by Defendant Thomas via unsolicited text messages. *See* Statement of Uncontroverted Facts ("SUMF") ¶¶ 2, 14-15.

By way of background, Defendant Fraley's connection to Plaintiff was as a Manufacturer's Representative for Centurion Stone ("Centurion"). SUMF ¶¶ 6-8. As a Manufacturer's Representative, Defendant Fraley was responsible for recommending dealers to Centurion to sell its products within his geographical territory. *Id*. Defendant Fraley recommended Plaintiff to be a dealer of Centurion in approximately 2005-2006 in Central Arkansas. SUMF ¶ 9. Centurion does not enter into written contracts with its dealers, including Plaintiff. SUMF ¶ 10. Therefore, Plaintiff's role as a dealer was always within Centurion's discretion. *Id*. Defendant Fraley also had no agreement with Plaintiff, written or otherwise, pertaining to Plaintiff's role as a Centurion dealer or as a purchaser of Centurion stone. SUMF ¶ 11. Notably, Centurion prefers its dealers to exclusively sell its products (and not those of its competitors), which was communicated to Plaintiff on multiple occasions. SUMF ¶ 13.

The Defendant-Employees worked for Plaintiff in various capacities. *See Complaint*, ECF No. 4, ¶ 9. Specifically, Defendant Randy Sims worked for Plaintiff as Superintendent, Defendant Megan Sims as Plaintiff's Office Manager, and Defendant Thomas as a Sales Representative. *Id*. Plaintiff has alleged that the Defendant-Employees "stole electronic information" including

1

"customer lists, credit applications, customer financial information, estimates, invoices, pricing information, and other proprietary information." *Id*. at ¶ 16.  Plaintiff has also alleged that the Defendant-Employees "removed or destroyed . . . information from [their] personnel files . . .and other electronic information." *Id*. at ¶ 18.

Unlike the claims against the Defendant-Employees, the claims against Defendant Fraley have nothing to do with electronic information.  Plaintiff's allegations and claims against Defendant Fraley pertain to a single alleged "confidential document" described by Plaintiff as "a credit application from Plaintiff to another manufacturer." ECF No. 4, *Complaint*, ¶ 27.  The referenced document was a one-page Commercial Credit Application ("the Application") dated June 22, 2021 to ProVia, a manufacturer of stone veneer and a direct competitor of Centurion, identifying the applicant as Stone Works, LLC.  SUMF ¶¶ 14 and 24.  On or about June 29, 2021, Defendant Thomas sent three photographs to Defendant Fraley via <u>unsolicited</u> text messages, which included one photograph of the Application and two photographs of a fax confirmation showing that the Application had been sent to someone. SUMF ¶ ¶ 14-16.  The photographs were taken of paper copies of the Application and fax confirmations.  SUMF ¶ 17.   Defendant Fraley never possessed the actual documents and never possessed electronic data or electronic information belonging to Plaintiff.  SUMF ¶ 18.

The Application, which was a single-page hand-written document, providing nothing more than the names and contact information for Plaintiff, its owners, and its references. SUMF ¶¶ 19-23.   Notably, in the "Trade Reference" section, Plaintiff listed Acme Brick & Tile ("Acme"), Salado Stone ("Salado), and Centurion.  SUMF ¶¶ 21-22.  For Acme and Salado, Plaintiff provided email addresses and phone numbers. *Id*. For Centurion, Plaintiff failed to provide any contact

SPR 17792713.1

information and wrote in all capital letters "DO NOT CONTACT." *Id*. Plaintiff is currently listed as a dealer on ProVia's website. SUMF ¶ 25.

At Centurion's direction, Defendant Fraley notified Plaintiff on or about August 12, 2021 that it would no longer be a dealer for Centurion. SUMF ¶ 26.

Plaintiff did not sell Centurion's products to third party installers.  SUMF ¶12. Plaintiff simply used Centurion products for its own masonry projects – i.e., installing the products directly for the end users. *Id*.  Defendant Fraley does not have any knowledge of Plaintiff's customers; nor has he made contact with any such customers. SUMF ¶ 31.

After being notified that it would no longer be a dealer for Centurion, Plaintiff inquired as to whether Centurion would fulfill its existing orders. SUMF ¶ 27.  Plaintiff was assured that Centurion would fulfill the existing orders, but that Centurion would require Plaintiff to pay for the orders upfront before the orders would be shipped.   SUMF ¶ 28. To date, Plaintiff has not paid Centurion for any of its outstanding orders, nor has it attempted to make alternative payment arrangements or arrangements to obtain the orders.  SUMF ¶ 29.

In summary, while Plaintiff makes various allegations against the Defendant-Employees regarding violations of their employment agreements and misappropriation of property and electronic data, Defendant Fraley's conduct included nothing more than (1) receiving the unsolicited text messages from Defendant Thomas containing the Application and fax confirmations and (2) conveying the information to Centurion. Centurion then instructed Defendant Fraley to notify Plaintiff that it would no longer be a Centurion dealer, which it had every right to do.  For the reasons that follow, and as a matter of law, Defendant Fraley is entitled to summary judgment on Counts I, II, III, V, VI, VII, IX, XI, and XII of Plaintiff' Complaint.

SPR 17792713.1

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is governed by F.R.C.P. 56, which provides that "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [emphasis added].  *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006). "[S]ummary judgment is available to avoid expensive trials of frivolous claims." *J.D. Fields & Co., Inc. v. Nucor-Yamato Steel*, 976 F. Supp. 2d 1051, 1064 (E.D. Ark. 2013), *citing Fusco v. Xerox Corp.*, 676 F.2d 332, 337 (8th Cir. 1982). The burden is on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by declaration or other evidence must set forth specific facts showing that a genuine issue of material facts exists. *Id.* "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Jackson v. U.S.*, 488 F. Supp. 3d 818, 820 (E.D. Ark. 2020), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Jackson*, 477 F. Supp. 3d at 820, *quoting Holloway v. Pigman*, 844 F.2d 365, 366 (8th Cir. 1989).

## III.   ARGUMENT

### A.   The Court should grant summary judgment to Defendant Fraley on Count I, because, as a matter of law, Defendant Fraley did not exercise dominion over Plaintiff's property.

Count I attempts to allege a claim for Conversion and is alleged against "All Defendants." Count I does not identify the property that was allegedly converted.   Plaintiff simply alleges that

it "was entitled to possess all property stolen by Defendant Randy Sims, Defendant Megan Sims, and Defendant William Thomas, and being used by all Defendants." ECF No. 4, *Complaint*, ¶ 33. That paragraph clearly does not allege that Defendant Fraley stole anything. It merely infers that Defendant Fraley used property that was stolen by the Defendant-Employees. Plaintiff then goes on to allege, inconsistent with the prior paragraph, that "[a]ll Defendants intentionally took and exercised control of Plaintiff's property. . . ." ECF No. 4, *Complaint*, ¶ 34.

The Court must look elsewhere within the Complaint to ascertain what property is actually at issue.  The only allegations Plaintiff makes against Defendant Fraley in the Complaint about "property" that he had any access to at all is found in paragraph 27, where Plaintiff alleges that:

> Fraley advised he had a [sic] received a confidential document belonging to Plaintiff (a credit application from Plaintiff to another manufacturer and part of the confidential information illegally removed from Plaintiff's computer systems and files) which indicated to him that Plaintiff was utilizing Centurion Stone's competitor's products for some of Plaintiff's customers projects.

ECF No. 4, *Complaint*. As explained herein, the referenced "confidential document" was the Application, which was a single-page hand-written credit application that Defendant Fraley received via <u>unsolicited</u> text message from Defendant Thomas. SUMF ¶¶ 14-15.  This is not conversion.

Conversion is a state law cause of action.  The Arkansas Supreme Court "has defined the tort of conversion as 'the exercise of dominion over property in violation of the rights of the owner or person entitled to possession.'" *Integrated Direct Marketing, LLC v. May*, 495 S.W.3d 73, 75 (Ark. 2016), *quoting Car Transp v. Garden Spot Dist.*, 805 S.W.2d 632, 634 (Ark. 1991). Complete deprivation is not required.  *Integrated Direct Marketing*, 495 S.W.3d at 75.  However, "to establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of, or is

5

inconsistent with, the owner's rights." *Id.* "Conversion can *only* result from conduct *intended* to affect property." *BBAS, Inc. v. Marlin Leasing Corp*., 289 S.W.3d 153, 155 (Ark. App. 2008), *quoting Alvarado v. St. Mary-Rogers Memorial Hosp*., 257 S.W.3d 583, 587 (Ark. App. 2007) (emphasis added).

Here, the only "property" even arguably at issue pertaining to the claims against Defendant Fraley is the Application, and Defendant Fraley did not commit any "distinct act of dominion" over the Application that would amount to conversion.  Defendant Thomas took a photograph of the Application and sent it via unsolicited text message to Defendant Fraley. SUMF ¶ 14. The text message was <u>unsolicited</u>.   *Id*. The photograph clearly shows that Plaintiff maintained the Application in paper form and kept it in a file. SUMF ¶¶ 2 and 17.  There is no indication or allegation that Defendant Thomas ever had more than a photograph of the Application.  There is likewise no indication or allegation that the Application itself is no longer in Plaintiff's possession. Defendant Fraley did nothing more than receive an unexpected and completely unsolicited text message.  He did not exercise dominion over Plaintiff's property.  In fact, Plaintiff cannot point to any conduct on the part of Defendant Fraley that would show that he "intended to affect property." As such, Count I fails as a matter of law against Defendant Fraley and summary judgment should be granted in his favor.

> **B.     The Court should grant summary judgment to Defendant Fraley on Count II, because he did not intentionally interfere or cause a breach of a valid business expectancy, nor did he cause Plaintiff resulting damage.**

Count II attempts to allege a claim for Tortious Interference with Business Expectancy and is also alleged against "All Defendants." The allegations contained within Count II simply state, "Plaintiff maintained contractual relationships or business expectancies with various customers for whom it was expecting to provide stone veneer masonry services." ECF No. 4, *Complaint*, ¶ 37.

6

Plaintiff then goes on to say, "Defendants had knowledge of these customers through their work for Plaintiff, through theft of Plaintiff's business information and through their competition with Plaintiff." ECF No. 4, *Complaint*, ¶ 38. Finally, Plaintiff alleges, "Defendants intentionally and improperly diverted existing customers away from Plaintiff and induced or caused disruption of the business expectancies." ECF No. 4, *Complaint*, ¶ 39.

As a preliminary matter, Defendant Fraley does not even fall within the scope of the allegations in paragraph 38 of Count II. First, Defendant Fraley did not work for Plaintiff. Second, Defendant Fraley has no knowledge of the customers for which Plaintiff performed masonry services. SUMF ¶ 31. Third, Defendant Fraley did not steal Plaintiff's business information. SUMF ¶¶ 14-16. Finally, neither Defendant Fraley nor Centurion is in competition with Plaintiff, because Plaintiff is in the business of providing masonry services (e.g., installing masonry) and Centurion is in the business of manufacturing stone. SUMF ¶¶ 6 and 30. Again, Plaintiff is attributing conduct on the part of the Defendant-Employees to Defendant Fraley, even though Plaintiff's own allegations and the uncontroverted facts show otherwise.

Like in Count I, the Court must again look outside the allegations in Count II to determine what conduct on the part of Defendant Fraley is at issue. The only allegations against Defendant Fraley that could even arguably fall within the scope of Count II are found in paragraphs 27 and 28 of the Complaint. In paragraph 27, Plaintiff alleges, in pertinent part:

> [Defendant Fraley] indicated that due to his belief Plaintiff would be selling a competitor's product, Plaintiff would no longer be permitted to purchase Centurion Stone products from the factory and would in the future have to buy at a higher price from Stone Concepts, LLC, who buys Centurion Stone products for resale and who, as noted above, now employs the Sims Defendants. . . .

ECF No. 4, *Complaint*. Plaintiff then goes on to allege against Defendant Fraley:

> Further, Plaintiff's current orders of Centurion Stone have been delayed for months, causing Plaintiff to be unable to finish its ongoing projects and unable to collect

7

> revenues related to those projects.  After multiple inquiries about its pending orders, following the conversation between Plaintiff and Ed Fraley discussed above, Centurion advised Plaintiff that as a result of that call, Centurion will require up-front payment to fulfill all pending orders, which is not standard business practice and has caused Plaintiff damages.

ECF No. 4, *Complaint*, ¶ 28. These allegations do not amount to tortious interference under Arkansas law.

> Under Arkansas law, the elements of tortious inference are:
>
> (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Baptist Health v. Murphy*, 373 S.W.3d 269, 281 (Ark. 2010), *citing K.C. Props. Of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 11 (Ark. 2008).  Arkansas law "also requires that the conduct of the defendants be at least 'improper . . .'." *Id*. In determining whether conduct is improper, the factors to be considered include:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.

Rest. (2d) Torts, § 767; *Baptist Heal*th, 373 S.W.3d at 282. Further, "Arkansas law provides that the defendant must have *either* desired to bring about the harm to the plaintiff or have known that the result was substantially certain to be produced by his conduct." *J.D. Fields & Co.,* 976 F. Supp. 2d 1066, *citing Baptist Health*, 373 S.W.3d at 282.

Here, Plaintiff has not identified any contracts or expectancies with which Defendant Fraley interfered. Plaintiff's own allegations simply state that its projects have been delayed for

SPR 17792713.1

*unidentified* customers as a result of Centurion requiring "up front payments." In addition to the fact that Plaintiff cannot actually identify any business expectancies with which Defendant Fraley interfered, there are multiple other reasons why Plaintiff's theory under Count II fails against Defendant Fraley. First, it is uncontroverted that Centurion, not Defendant Fraley, is requiring Plaintiff to pay for its before shipment.    ECF No. 4, *Complaint*, ¶ 28; SUMF ¶ 28.   Second, regardless of whether Centurion's payment requirement can somehow be legally attributed to Defendant Fraley, such requirement is not improper and, thus, cannot be the basis for a tortious interference claim. Third, it is uncontroverted that the existing orders have been available to Plaintiff, but that Plaintiff has failed to pay for the orders or to attempt to make alternative payment arrangements or arrangements to obtain the orders.  SUMF ¶ 29.  Therefore, if Plaintiff's projects have been delayed, it is due to Plaintiff's own conduct.  Finally, Plaintiff's customers are those for which it performs masonry work, and not third parties purchasing stone. SUMF ¶ 30.  Defendant Fraley had no contact with Plaintiff's customers and does not even know who they were.  SUMF ¶ 31.

Ultimately, Plaintiff has no evidence that Defendant Fraley did anything that could be deemed tortious interference under Arkansas law. For these reasons, and as a matter of law, the Court should grant summary judgment to Defendant Fraley on Count II.

    **C.**    **The Court should grant summary judgment to Defendant Fraley on Count III, because, as a matter of law, the Application did not contain trade secrets and his conduct with respect to the Application did not constitute "misappropriation" under the Defend Trade Secrets Act or the Arkansas Trade Secrets Act.**

Count III attempts to allege claims for Theft of Trade Secrets against "All Defendants." Count III is asserted under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*., and

SPR 17792713.1

the Arkansas Trade Secrets Act ("ATSA"), Ark. Code Ann. § 4-75-601, *et seq.*  Plaintiff alleges

that:

> Plaintiff's confidential and proprietary information, including computer data,
> customer information, financial information, employee files, and more, are 'trade
> secrets' because they constitute information which Plaintiff derives independent
> economic value from the information which is not generally known to or readily
> accessible by proper means or by other persons who could obtain economic value
> from its disclosure or use.

ECF No. 4, *Complaint* ¶ 4.  Again, as to Defendant Fraley, the only information at issue is the

Application referenced in paragraph 27.  Defendant Fraley is entitled to summary judgment on

Count III, because the uncontroverted facts establish as a matter of law under the DTSA and ATSA

that Defendant Fraley did not misappropriate Plaintiff's trade secrets.

### 1.  Theft of Trade Secrets under the DTSA

The DTSA "creates a private right of action for an owner of a trade secret when that secret

has been misappropriated . . ." *Pitts v. Fire Extinguisher Sales & Services of Ark., LLC*, No. 4:21-

cv-00075-LPR, 2021 WL 4860812, at *8 (E.D. Ark. 2021).  The DTSA defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or
> engineering information, including patterns, plans, compilations, program devices,
> formulas, designs, prototypes, methods, techniques, processes, procedures,
> programs, or codes, whether tangible or intangible, and whether or how stored,
> compiled, or memorialized physically, electronically, graphically,
> photographically, or in writing if—
>
> > (A)   the owner thereof has taken reasonable measures to keep such
> > information secret; and
> >
> > (B) the information derives independent economic value, actual or
> > potential, from not being generally known to, and not being readily
> > ascertainable through proper means by, another person who can obtain
> > economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).  The term "misappropriation" is defined under the DTSA as:

> (A)   acquisition of a trade secret of another by a person who knows or has reason
> to know that the trade secret was acquired by improper means; or

(B)    disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;
(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
(I) derived from or through a person who had used improper means to acquire the trade secret;
(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
(iii) before a material change of the position of the person, knew or had reason to know that--
(I) the trade secret was a trade secret; and
(II) knowledge of the trade secret had been acquired by accident or mistake;

18 U.S.C. § 1839(5).

Here, the Application was not a trade secret, nor did it contain trade secret information as defined by the DTSA.  First, it did not contain the type of information that qualifies as a trade secret under the DTSA, such as financial, business, or technical information, etc. The Application was a single-page hand-written document, providing nothing more than the names and contact information for Plaintiff, its owners, and its references. SUMF ¶¶ 19-23.  As with any typical application, the top portion included the applicant's contact information. *Id*. The remaining sections of the one-page application were "Ownership," "Trade Reference," and "Bank Ref."  *Id*. With respect to each of those sections, the information was limited to names and contact information. *Id*.  Of note, in the "Trade Reference" section, Plaintiff identified Centurion and wrote in all capital letters "DO NOT CONTACT." *Id*. There is simply nothing in the Application that could even arguably be considered a trade secret.

11

Second, even if the Application contained the type of information that would qualify as a trade secret under the DTSA, Plaintiff failed to meet the other requirements under 18 U.S.C. § 1839(3).  Specifically, as to subpart (A), Plaintiff did not take reasonable measures to keep the information secret.  The Application was kept in paper format that was easily accessed by employees.  SUMF ¶¶ 14-17.  It was sent via fax to someone, presumably ProVia. *Id.*  As such, the information was clearly provided to at least one third party.  Finally, as to subpart (B), the Application provided very little information about Plaintiff, and certainly did not contain anything that derived independent economic value.

Likewise, the elements of a DTSA claim are not satisfied, because Defendant Fraley's conduct does not meet the definition of "misappropriation."  Defendant Fraley received the Application through <u>unsolicited</u> text messages from Defendant Thomas.  SUMF ¶¶ 14-16.  He did not obtain it through his own improper means, nor did he have reason to believe that it contained trade secret information.   For purposes of this motion, Defendant Thomas's conduct is not at issue.  Regardless, because the information obtained by Defendant Thomas was not trade secret information, it could not be the subject of "misappropriation" under the DTSA.   Therefore, Defendant Fraley's receipt of said information was also not misappropriation.

### 2.   Theft of Trade Secrets under the ATSA

The analysis is similar under the ATSA.  The ATSA "was adopted in 1981" and "is based on the Uniform Trade Secrets Act." *R.K. Enterprise, LLC v. Pro-Comp Mgmt, Inc*., 158 S.W.3d 685, 689 (Ark. 2004).  "Trade secret" is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

SPR 17792713.1

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ark. Code Ann. § 4-75-601(4).  The ATSA defines "misappropriation" as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
  (i) Used improper means to acquire knowledge of the trade secret; or
  (ii) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
    (a) Derived from or through a person who had utilized improper means to acquire it;
    (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
    (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
  (iii) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake;

Ark. Code Ann. § 4-75-601(2).

For the same reasons that Plaintiff's claim fails under the DTSA, its ATSA claim is likewise deficient as a matter of law.  The Application did not contain any trade secrets and Defendant Fraley's conduct in receiving the Application through unsolicited text messages does not qualify as misappropriation.  Therefore, the Court should grant summary judgment to Defendant under Count III as to both the DTSA claim and the ATSA claim.

Notably, the ATSA explicitly preempts tort claims for misappropriation of trade secrets. Ark. Code Ann. § 4-75-602(1), "Effect on other law," reads, "[t]his subchapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." The Arkansas Supreme Court has specifically found that "the statutory language of the Trade Secrets Act displaces or preempts the award of damages based upon tort claims for conversion of trade secrets, as well as other tort claims such as conspiracy,

13

that may arise under a claim for misappropriation of trade secrets." *R.K. Enterprise*, 158 S.W.3d at 690.  Therefore, even if the Court finds that the Application does contain trade secrets, the Court should still grant summary judgment to Defendant Fraley on Counts I (Conversion), VII (Civil Conspiracy), and XI (Unjust Enrichment) because those claims are expressly preempted by the ATSA.

>   **D.    The Court should grant summary judgment to Defendant Fraley on Count V, because the claims against Defendant Fraley do not concern electronic information or information involving computers and the unconverted facts establish that Defendant Fraley did not commit Theft of Property under Arkansas law, the only crime alleged in Count V that does not concern computers.**

Count V is titled "Unauthorized Computer Program Access and Theft" and is alleged against "All Defendants." In this this Count, Plaintiff cites various provisions of the Computer Fraud and Abuse Act ("CFAA") and Arkansas law to support Plaintiff's assertion that "the action taken by Defendants constitutes felonious criminal conduct . . .."  ECF No. 4, *Complaint*, ¶ 58. The cited provisions include:

>   (a) Fraud and related activity in connection with computers.  See 18 U.S.C. § 1030.
>   (b) Theft of property. See Ark. Code Ann. § 5-36-103.
>   (c) Computer trespass.  See Ark. Code Ann. § 5-41-104.
>   (d) Unlawful act regarding a computer. See Ark. Code Ann. § 5-41-202.
>   (e) Unlawful interference with access to computers or unlawful use or access to computers. See Ark. Code Ann. § 5-41-203.

*Id*. Based upon the allegations of criminal conduct, Plaintiff asserts further that it is entitled to payment of its damages under Ark. Code Ann. § 5-41-106 (a statute providing a civil remedy for *computer* crimes) and its attorneys' fees under Ark. Code Ann. § 16-118-07 (a statute providing a civil cause of actions for crime victims).  ECF No. 4, *Complaint,* ¶¶ 60-61.

The cited provisions in subparagraphs 58(a), (c), (d), and (e) can easily be disregarded, because the claims against Defendant Fraley have nothing to with computers or information

14

derived from a computer. The Application was a hand-written document maintained in paper form. SUMF ¶ 17. The photographs sent to Defendant Fraley by Defendant Thomas were photographs of the paper copies of the Application and the fax confirmations. *Id.*

The only provision cited in paragraph 58 of Plaintiff's Complaint that applies to offenses other than those related to computers is Theft of Property under Ark. Code Ann. § 5-36-103.  Under that section:

> (a) A person commits theft of property if he or she knowingly:
> (1) Takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the owner of the property; or
> (2) Obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property.

The uncontroverted facts establish that Defendant Fraley did not commit Theft of Property with respect to the Application. The photographs of the Application received from Defendant Thomas were <u>unsolicited</u>.  SUMF ¶¶ 14-16.   Further, Defendant Fraley only had a photograph of the Application and, presumably, Plaintiff still maintains the paper copy.  Therefore, Defendant Fraley did not knowingly take or exercise control over the Application, nor did he intend to deprive Plaintiff of the Application. Finally, there is no evidence that he received the Application by deception or by threat.

Because the uncontroverted facts establish that the claims against Defendant Fraley do not involve computers or computer information and because the elements of a claim for Theft of Property cannot be met, as a matter of law, the Court should grant summary judgment in favor of Defendant Fraley on Count V.

> **E.      The Court should grant summary judgment to Defendant Fraley on Count VI, because, as a matter of law, Defendant Fraley did not access a nonpublic area of Plaintiff's commercial property, nor did he direct or assist the Defendant-Employees in doing so.**

15

In Count VI, Plaintiff purports to allege a claim for "Unauthorized Access to Property" against "All Defendants" under Ark. Code Ann. § 16-118-113. The cited provision provides that "[a] person who knowingly gains access to a nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter the nonpublic area is liable to the owner or operator of the commercial property for any damages sustained by the owner or operator." Ark. Code Ann. § 16-118-113(b).   The allegations in Count VI again seem to acknowledge that Defendant Fraley was not involved in the actual taking of any of Plaintiff's property.   *See* ECF No. 4, *Complaint*, ¶ 63 ("The Defendant-Employees knowingly accessed the business property of their employer, Stone Works, in a nonpublic area without authorization to capture and remove the Plaintiff's data, records, and documentation to use the information contained in this data, records, and documentation to intentionally harm  the Plaintiff.").  Plaintiff then goes on to allege that "[a]ll other Defendants are liable by knowingly directing or assisting the Defendant-Employees." ECF No. 4, *Complaint*, ¶ 64.

The uncontroverted facts in this matter fail to establish a claim for Unauthorized Access to Property under Ark. Code Ann. § 16-118-113.  As discussed herein, Plaintiff has made numerous allegations against the Defendant-Employees regarding theft of information and property. Those same allegations do not apply to Defendant Fraley.  His involvement in this case is limited to his receipt of the Application through <u>unsolicited</u> text messages.  The "unsolicited" nature of the text messages is proof alone that Defendant Fraley did not knowingly direct or assist the Defendant-Employees with their theft of information, if any such theft occurred.    Realistically, it is unlikely that Plaintiff can prevail on this claim against even the Defendant-Employees, because it seems unlikely that they exceeded their authority to access a nonpublic area of the business as employees. Regardless, Plaintiff's theory under Count VI against Defendant Fraley is limited to his alleged

SPR 17792713.1

direction or assistance to the Defendant-Employees, which is refuted by the uncontroverted facts.

As such, the Court should grant summary judgment to Defendant Fraley on Count VI.

 

      **F.**      **The Court should grant summary judgment to Defendant Fraley on Count VII, because there is no evidence to support the underlying tort claims and there is no evidence that Defendant Fraley worked with anyone to accomplish an unlawful or oppressive purpose against Plaintiff.**

In its seventh claim, Plaintiff purports to allege a claim for Civil Conspiracy against "All

Defendants."  The basis for this claim is asserted as follows:

> All Defendants knowingly entered into a conspiracy to access and steal Plaintiff's property, misuse Plaintiff's property; interfere with Plaintiff's contracts and business expectancies; steal, misappropriate or misuse Plaintiff's trade secrets; access, steal, and misuse computer programs and data, including confidential and proprietary and other business information; to breach employment and non-compete agreements; to violate the Arkansas Deceptive Trade Practices Act; and engage in intentional and malicious conduct to harm and ultimately destroy Plaintiff's business.

ECF No. 4, *Complaint*, ¶ 67.  Consistent with the previous counts, Plaintiff does not specify which

conduct is attributed to which defendant(s) and groups Defendant Fraley in with the Defendant-

Employees, even though Plaintiff's theory for recovery against Defendant Fraley is substantially

different from its theory against the Defendant-Employees. Regardless, under Arkansas law,

Defendant Fraley has not committed civil conspiracy.

"A civil conspiracy is an intentional tort which requires a specific intent to accomplish the

contemplated wrong."  *Faulkner v. Arkansas Children's Hosp*., 69 S.W.3d 393, 406 (Ark. 2002)

[citations omitted].  "To prove a civil conspiracy, a plaintiff must show that two or more persons

have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some

purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral

means, to the injury of another."  *Id*. "A civil conspiracy is not actionable in and of itself, but a

SPR 17792713.1

recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Id*.  "A plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim." *Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 812 (E.D. Ark. 2016).  "A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence." J.*D. Fields & Co.*, 976 F. Supp. 2d at 1070, *quoting Mason v. Funderburk*, 446 S.W.2d 543, 548 (Ark. 1969).

Here, because each and every underlying tort claim against Defendant Fraley fails as discussed herein, Plaintiff's claim for civil conspiracy must also fail.  Assuming *arguendo* that Plaintiff could prevail on one of the underlying tort claims, the civil conspiracy claim against Defendant Fraley still fails.  Plaintiff has no evidence that Defendant Fraley did anything in connection with the Defendant-Employees that resulted in damage to Plaintiff, and the uncontroverted facts establish otherwise. The only connection that Plaintiff has even alleged between the Defendant-Employees and Defendant Fraley is a mere *innuendo* in paragraph 27 of the Complaint that the information that Defendant Fraley received (the Application) came from the Defendant-Employees.  Plaintiff was correct that the Application came from one of the Defendant-Employees, Defendant Thomas.  However, the manner in which it was received by Defendant Fraley, through underlined unsolicited text messages, does not provide any basis for a civil conspiracy claim.

The only other conduct of Defendant Fraley that is even at issue in this case concerns his involvement with Centurion's decisions to cease its relationship with Plaintiff as a dealer and to require Plaintiff to pay for its orders before shipment.  Again, any allegations of wrongdoing with respect to those two issues is actually directed at Centurion, and not Defendant Fraley.  Regardless,

18

Centurion was fully justified in making both of those decisions and they do not form the basis for

a civil conspiracy claim, because they were not unlawful, oppressive, or immoral and were not

intended to injure Plaintiff.  For these reasons, the Court should grant summary judgment to

Defendant Fraley on Count VII.

> **G.    The Court should grant summary judgment to Defendant Fraley on Count IX, because Plaintiff is not a consumer under the ADTPA, Defendant Fraley did not engage in any deceptive or misleading consumer-oriented practice against Plaintiff, and Plaintiff has not suffered any actual financial loss attributable to Defendant Fraley.**

In Count IX, Plaintiff attempts to allege a claim under the Arkansas Deceptive Trade

Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*, against "All Defendants."  The

basis for this claim is stated as follows:

> All Defendants engaged in unconscionable, false, and deceptive acts and business practices, including but not limited to the use of Plaintiff's confidential and proprietary information, trade secrets and property for the benefit of Defendants without the authorization of the Plaintiff; Defendants' intentional, improper and willful interference with Plaintiff's contractual relationships and business expectancies; Defendants disparaging the services and business of Plaintiff by false and misleading representations of fact to third parties; and knowingly facilitating, assisting intermediating and otherwise aiding the operation and continuance of the acts and practices outlined herein.

ECF No. 4, *Complaint*, ¶ 77.  Plaintiff does not cite any specific provision of the ADTPA as a

basis for relief, except for the attorneys' fees provision found in Ark. Code Ann. § 4-88-113, which

provides that "[a] court may award reasonable attorney's fees."    Additionally, Plaintiff seeks

monetary damages and injunctive relief under this claim.

The ADTPA primarily governs consumer protection actions brought by the Arkansas

Attorney General.  According to the Arkansas Supreme Court, the General Assembly's intent in

passing the ATDPA was "to protect consumers . . .by making its provisions effective for consumers

who are not likely to have financial means to obtain legal assistance to bring individual actions,

SPR 17792713.1

who are unlikely to be aware of their legal rights, and who have no choice but to continue paying illegal rates . . . ." *State ex rel. Bryant v. R&A Inv. Co., Inc*., 985 S.W.2d 299, 296 (Ark. 1999). However, Ark. Code Ann. § 4-88-113 provides a limited private cause of action.  Specifically, "[i]n 2017, the civil enforcement provision of the ADTPA was amended and now reads in pertinent part:

> A person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter may bring an action to recover his or her actual financial loss proximately caused by the offense or violation, as defined in this chapter.
> …
>
> To prevail on a claim brought under this subsection, a claimant must prove individually that he or she suffered an actual financial loss proximately caused by his or her reliance on the use of a practice declared unlawful under [the ADTPA].

*Hunter v. Midfirst Bank*, No. 4:21-cv-00362-LPR, 2021 WL 5999651, at *14 (E.D. Ark. 2021), *quoting* Ark. Code Ann. § 4-88-113(f)(1)(A)(2) & (f)(2).  "Actual financial loss" is defined under the ADTPA as "an ascertainable amount of money that is equal to the difference between the amount paid by a person for goods or services and the actual market value of the goods or services provided to a person." Ark. Code Ann. § 4-88-102(9).

More simply stated, the elements of a private ADTPA claim are "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) an injury resulting from such act." *Parnell v. FanDuel, Inc.*, 591 S.W.3d 315, 318 (Ark. 2019). According to the Arkansas Supreme Court, private claims under the ADTPA must be brought by a consumer or consumer rights must be "at the heart of the unconscionable conduct." *See Apprentice Info. Sys., Inc. .v. DataScout, LLC*, 544 S.W.3d 536 (Ark. 2018).  Further, "[T]he ADTPA does not 'provide for a private cause of action seeking injunctive relief.'" *Id*., *quoting Baptist Health v. Murphy*, 373 S.W.3d 269, 288 (Ark. 2010).

20

In *Apprentice Info. Sys.*, the Arkansas Supreme Court reversed a judgment from the trial court awarding damages to DataScout, LLC and against Apprentice Information Systems, Inc. ("AIS") for an ADTPA claim, among other claims. *Id.* at 2. AIA and DataScout were competitors who provided bulk data to companies and individuals. *Id.* at 3. DataScout's claim involved various allegations of unfair competition. *Id.* at 3-5. AIS argued that the ADTPA did not apply and "that the ADTPA applies only to consumer-oriented practices." *Id.* The Arkansas Supreme Court agreed, finding that "the circuit court clearly erred in finding that DataScout was a consumer for purposes of the ADTPA." *Id.* at 5. Further, "AIS and DataScout were competitors in the market of selling counties' public data, and there is simply no 'consumer-oriented act' as required for a cause of action under the ADTPA." *Id.* The court went on to explain, "DataScout sued over its thwarted business model, not a specific harm to consumers." *Id.* at 6.

Here, Plaintiff is also not a consumer for purposes of the ADTPA and has not alleged a violation of any consumer-oriented act against Defendant Fraley. Plaintiff is not a consumer for purposes of the ADTPA, because the acts complained of are specific to the rights of dealers for Centurion, not consumers. Like in *Apprentice Info. Sys.*, Plaintiff's theory in this case concerns its purported competition with the defendants. Therefore, a "consumer-oriented" practice is not at issue and Plaintiff's claim under the ADTPA must fail.

Again, Plaintiff's claims against Defendant Fraley are limited to his receipt of the Application and his involvement with Centurion's decision to cease its relationship with Plaintiff as a dealer and to require Plaintiff to pay for its orders before shipment. His receipt of the Application is not at issue in Count IX. If the Court considers the remaining conduct to be "consumer-oriented," Count IX still fails, because the only conduct that forms the basis for an ADTPA claim is a "practice declared unlawful under [the ADTPA]." No such practices are at issue

21

in Count IX against Defendant Fraley and, therefore, summary judgment should be granted in his favor.

Plaintiff's ADTPA claim against Defendant Fraley also fails because Plaintiff cannot establish an "actual financial loss" attributable to Defendant Fraley. Plaintiff's only theory of loss against Defendant Fraley pertains to the delay in Plaintiff's projects as a result of Centurion's pay before shipment requirement. ECF No. 4, *Complaint*, ¶ 28. However, it is uncontroverted that Centurion, not Defendant Fraley, is requiring Plaintiff to pay for its orders before shipment. ECF No. 4, *Complaint*, ¶ 28; SUMF ¶ 28. Further, it is uncontroverted that the existing orders have been available to Plaintiff, but that Plaintiff has failed to pay for the orders or to attempt to make alternative payment arrangements or arrangements to obtain the orders. SUMF ¶ 29. Therefore, if Plaintiff's projects have been delayed, it is due to Plaintiff's own conduct. Realistically, Plaintiff's claim for damages is completely conjecture and it cannot make any causal connection between any such damages and conduct on the part of Defendant Fraley.

Finally, the Court should note that Plaintiff's request for injunctive relief is improper for private party actions under the ADTPA. *Apprentice Info. Sys., Inc. .v. DataScout, LLC*, 544 S.W.3d 536 (Ark. 2018), *quoting Baptist Health v. Murphy*, 373 S.W.3d 269, 288 (Ark. 2010).

As a matter of law, Plaintiff's ADTPA claim against Defendant Fraley fails and summary judgment should be granted in his favor.

### H.   The Court should grant summary judgment to Defendant Fraley on Count XI, because Plaintiff cannot establish that Defendant Fraley received something of value from Plaintiff for which Plaintiff should receive restitution.

In count XI,[1] Plaintiff attempts to allege a claim for unjust enrichment against "All Defendants." The two-paragraph claim is primarily aimed at the Defendant-Employees. In fact,

---

[1] The Complaint skips from Count IX to Count XI.

paragraph 82 of the Complaint is specific to the conduct of the Defendant-Employees.  The *only* other allegations in Count XI state, "Defendant have used Plaintiff's confidential and proprietary information to further their own personal interest and the interests of all Defendants, which are improperly competing with Plaintiff." ECF No. 4, *Complaint*, ¶ 83.  Plaintiff does not have a cognizable claim for unjust enrichment against Defendant Fraley under Arkansas law.

"Unjust enrichment is an equitable doctrine based on the notion that a person should not become unjustly enriched at the expense of another and should be required to make restitution for the unjust enrichment received." *Tuohey*, 173 F. Supp. 3d at 813. The elements for an unjust enrichment claim are "(1) [the defendant] must have received something of value, (2) to which it was not entitled and which it must restore . . ., and (3) there was some operative act, intent, or situation that make the alleged enrichment of [the defendant] unjust an inequitable." *Arkansas Devel. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 499 (Ark. 2020), *citing Guar. Nat'l Ins. Co. v. Denver Roller, Inc.,* 854 S.W.2d 312 (Ark. 1993); *Frigillana v. Frigillana*, 584 S.W.2d 30 (Ark. 1979). "Unjust enrichment is restitutionary in nature and focuses on the benefit received." *Platte River Ins. Co. v. Baptist Health*, No. 4:07-cv-0036-SWW, 2009 WL 2015102, at *19 (E.D. Ark. 2009). "Receiving something of value is an *essential* element" of unjust enrichment. *Whitley v. Baptist Health*, No. 4:16-cv-624-DPM, 2019 WL 4411962, at *7 (E.D. Ark. 2019) [emphasis added].

As detailed above, the only basis Plaintiff gives for its unjust enrichment claim against Defendant Fraley is that he "used Plaintiff's confidential and proprietary information" to further his own personal interest and that he is "improperly competing with Plaintiff." ECF No. 4, *Complaint*, ¶ 83.  Aside from the fact that these allegations do not even properly allege a claim for unjust enrichment, they are also refuted by the uncontroverted facts.  First, as established herein, the only information at issue with respect to Defendant Fraley is the Application, and the

23

Application did not contain confidential or proprietary information.  Second, the uncontroverted

facts show that the only thing that Defendant Fraley did with the Application was notify Centurion

that Plaintiff was working with Centurion's competitors.  Defendant Fraley certainly had the right

to notify Centurion that one of its dealers, a dealer that he specifically oversaw, was seeking to

deal a competitor's product.  There was nothing unlawful about his conduct and the same cannot

be said to have been done to further his own personal interest.  Finally, Defendant Fraley is not

"improperly competing with Plaintiff."  As a Manufacturer's Representative for Centurion, a stone

manufacturer, Defendant Fraley is not in competition with Plaintiff.  Centurion is likewise not in

competition with Plaintiff. In fact, Centurion relies upon masonry installers like Plaintiff to

purchase its products.  To the extent that Plaintiff is dealing ProVia products, it may be in

competition with Centurion.  However, Plaintiff has no evidence and has made no allegations that

Defendant Fraley or Centurion has improperly impeded Plaintiff from dealing ProVia's products.

In fact, Plaintiff has attempted through its Complaint to avoid the fact that it is a dealer for ProVia,

but ProVia clearly lists Plaintiff as a dealer on its website.  SUMF ¶ 25.

Ultimately, the most significant deficiency in Count XI is the fact that Plaintiff has not pled

and has no evidence that Defendant Fraley received something of value from Plaintiff, which is an

"an *essential* element" of unjust enrichment. *Whitley*, 2019 WL 4411962, at *7. [emphasis added].

Again, the Court is left to speculate what Plaintiff can even be arguably inferring to be "something

of value."  If it was the Application, then that clearly does not constitute "something of value,"

because it contained nothing more than names and contact information. SUMF ¶¶ 19-23.  Further,

Defendant Fraley never possessed the actual application and, presumably, Plaintiff still has and

can use the paper copy. SUMF ¶¶ 17-18. As such, the Application does not provide any basis upon

24

which Defendant Fraley could owe Plaintiff restitution. As pled, and based upon the uncontroverted facts, the Court should grant summary judgment to Defendant Fraley on Count XI.

> **I.**  **The Court should grant summary judgment to Defendant Fraley on Count XII, because no reasonable jury could find grounds for awarding punitive damages against Defendant Fraley under the standard established by Ark. Code Ann. § 16-55-206.**

In its final claim for Punitive Damages against "All Defendants," Plaintiff alleges in the single-paragraph count that, "Defendants have acted maliciously with the intent to harm Plaintiff, or with conscious indifference to the consequences of their actions." ECF No. 4, *Complaint*, ¶ 84. No factual basis for the punitive damages request is pled.

Punitive damages under Arkansas law are governed by Ark. Code Ann. § 16-55-206, which provides:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1)    The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
>
> (2)    The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

"A plaintiff must satisfy the burden of proof required under § 16-55-206 by clear and convincing evidence." Ark. Code Ann. § 16-55-207. "Summary judgment is appropriate on the issue of punitive damages if the evidence is such that no reasonable jury could find grounds for awarding punitive damages under the standard established by Arkansas law." *Wheeler v. Carlton*, No. 3:06-cv-00068-GTE,  2007 WL 30261, at *8 (E.D. Ark. 2007), *quoting In re Aircraft Accident at Little Rock, Arkansas* on June 1, 1999, 351 F.3d 874, 876 (8th Cir. 2003).

SPR 17792713.1

Here, no reasonable jury could find grounds for awarding punitive damages against Defendant Fraley under the standard established by Ark. Code Ann. § 16-55-206. Most notably, Plaintiff cannot prevail on any claim against Defendant Fraley for compensatory damages. Thus, punitive damages may not be recovered.  Further, as established by the uncontroverted facts, there is no applicable aggravating factor that would warrant an award of punitive damages. First, there is no evidence that Defendant Fraley knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally and probably result in injury or damage to Plaintiff. Second, there is no way to infer malice or reckless disregard on the part of Defendant Fraley.  Finally, there is no evidence that Defendant Fraley intentionally pursued a course of conduct for the purpose of causing injury or damage to Plaintiff.  In fact, no improper or unlawful conduct is even alleged against Defendant Fraley.  Defendant Fraley did nothing more than receive underlined underline unsolicited text messages from Defendant Thomas.   Defendant Fraley's conduct does not provide any basis for a punitive damages away and, therefore, summary judgment should be granted in his favor on Count XII.

## IV.   CONCLUSION

In order for Plaintiff to prevail on any count against Defendant Fraley, the Court would essentially have to find that Defendant Fraley was not entitled to inform Centurion of the information that he saw in the unsolicited text messages from Defendant Thomas.  Likewise, the Court would have to find that Centurion was not justified in ceasing its relationship with Plaintiff as a dealer and in requiring Plaintiff to pay for its orders before shipment, and that Defendant Fraley is somehow responsible for those actions.  Ultimately, Plaintiff cannot point to any conduct on the part of Defendant Fraley that violates Arkansas law or federal law.  Based upon the

26

uncontroverted facts, and as a matter of law, Defendant Fraley is entitled to summary judgment on each and every count alleged against him.

WHEREFORE, Defendant Edward Fraley respectfully requests the Court enter its order for summary judgment in favor of Defendant Fraley and against Plaintiff on Counts I, II, III, V, VI, VII, IX, XI, and XII of Plaintiff's Complaint  and such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

Jason C. Smith AR 2006103
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Mo. 65804
Telephone:  417-888-1000
Facsimile:   417-881-8035
jcsmith@spencerfane.com

and

Harry E. "Bud" Cummins AR 89010
The Law Offices of Bud Cummins
1818 N. Taylor St. #301
Little Rock, AR 72207
bud@budcumminslaw.com

and

Daniel R. Carter AR 80023
JAMES & CARTER, PLC
500 Broadway, Suite 400
Little Rock, AR  72201
dcarter@jamescarterlaw.com

*Attorneys for Defendant Edward Fraley*

27

SPR 17792713.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 15th day of March, 2022, a true and accurate copy of the foregoing instrument was filed with the Court's electronic filing system, which sent notice of such filing to the following attorneys of record:

Rickey Hicks
902 West Second St.
Little Rock, AR 72201
hickslawoffice@yahoo.com

Timothy Dudley
10201 W. Markham, Ste. 328
Little Rock, AR 72205
todudley@swbell.net
**Attorneys for Defendants Sims**

Rickey Hicks
Dustin McDaniel
Scott Richardson
McDaniel, Wolff & Benca, PLLC
1307 West Fourth St.
Little Rock, AR 72201
scott@mwbfirm.com
**Attorneys for Stone Concepts, LLC
And Hesch**

Erin Cassinelli
Lassiter & Cassinelli
300 S. Spring St., Suite 800
Little Rock, AR 72201
**erin@lcarklaw.com**

Timothy Giattina
Hodge, Calhoun Giattina, PLLC
711 W.3rd St.
Little Rock, AR 72201
tim@hcglawoffice.com
**Attorney for Plaintiff**

The undersigned hereby certifies further that on this 15th day of March 2022, a true and accurate copy of the foregoing instrument was mailed via U.S. Regular Mail postage prepaid to Pro Se Defendant William Thomas, 1205 Anemone Dr., North Little Rock, AR 72117.

Jason C. Smith AR 2006103

28

SPR 17792713.1