IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| STONE WORKS, LLC, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CASE NO. 4:21-cv-941 |
| ) | |
| RANDY SIMS; MEGAN SIMS; WILLIAM ) | |
| THOMAS; STONE CONCEPTS, LLC; MARTY ) | |
| HESCH, and EDWARD FRALEY ) | |
| ) | |
| DEFENDANTS ) | |

PLAINTIFF'S RESPONSE TO DEFENDANTS FRALEY'S MOTION FOR PROTECTIVE ORDER AND INCORPORATED BRIEF

Comes the Plaintiff, Stone Works, LLC, by and through its attorneys Patrick R. James with James, House, Swann & Downing, P.A., Timothy J. Giattina, with Lassiter & Cassinelli, PLLC and Erin Cassinelli, with Lassiter & Cassinelli, and for its Response to Motion for Protective Order and Incorporated Brief, state:

I.   Introduction

1.   Defendant Edward Fraley's Motion was improvidently filed and raises issues with this Court which counsel previously resolved in a conference call approximately one hour before Defendant's filing of the Motion.

2.   Specifically, a Zoom call was conducted with all counsel commencing at 2:00 p.m., Monday, March 28, 2022. In that call the parties agreed to move the date of Mr. Fraley's and Mr. Hesch's depositions to April 12th and April 26th, 2022, respectively.

1

3.      Shortly after the phone call Defendant Fraley filed his Motion for Protective Order representing that the parties had not been able to resolve issues between themselves after a meet and confer. This included the scheduling of Defendant Fraley's deposition on April 1st, 2022---which had been resolved in the meet and confer.

4.      Further, the urgency to take depositions arising from Defendant Fraley's Motion for Summary Judgment and the deadline to respond was resolved by this Court in its Order dated March 24, 2022 setting the date for the Response as May 27, 2022.

5.      In light of the fact that the issue of the dates for depositions has been resolved Plaintiff will not burden the Court or the record with the extensive communications concerning the dates for the depositions.

## II. The Remaining Issues

6.      There are two remaining issues for Defendant's Motion for Protective Order. The first is Defendant Fraley's request for an advisory opinion to substantially limit the scope of his deposition.

7.      The second is whether the deposition of Defendant Fraley should take place in Little Rock, Arkansas where all counsel except one are located and where all parties except one are located or in Springfield, Missouri where that party's attorney maintains an office.

8.      Each of these issues will be discussed in turn.

### A. Defendant Fraley's Request to Restrict Deposition Discovery

9.      Defendant Fraley seeks an Order from this Court restricting the scope and substance of the very first deposition to be conducted in this case. His Motion seeks to alter the Federal Rules of Civil Procedure with regard to the conducting of depositions and offensively seeks an advisory decision limiting the scope of depositions prior to a single question being asked in depositions.

10. Rules 26-45 of the Federal Rules of Civil Procedure generally address discovery in civil proceedings and set forth procedures for resolving discovery disputes. This is apparently not good enough for Defendant Fraley.

11. As is set forth below Defendant's Motion is both unwarranted and premature.

### B. The Pleadings

12. In addressing Defendant Fraley's Motion, one must first review the allegations contained in the September 10, 2021 Complaint and the October 8, 2021 Agreed Temporary Restraining Order.

13. The Complaint makes numerous allegations regarding the Defendant's wrongful acts and asserts causes of action against Fraley for conversion, tortious interference with business expectancy, theft of trade secrets, unauthorized computer programs access and theft, unauthorized access to property, civil conspiracy, violation of the Arkansas Deceptive Trade Practices Act, and unjust enrichment.  For the purposes of Defendant Fraley's Motion these allegations must be taken as true.

14. The allegations and issues in the Complaint are broad and far reaching and will require extensive discovery, including depositions, to fully explore and expose the actions of Defendants that give rise to this litigation.

15. The Agreed Temporary Restraining Order, which Fraley's counsel signed and agreed to, required Defendants to return certain records (Paragraph 4); restrained all Defendants from revealing or utilizing Plaintiff's confidential information or trade secrets in their knowledge or possession, or threatening to reveal this information (Paragraph 6); restrained all Defendants from engaging in unfair competition or other conduct otherwise prohibited by law (Paragraph 7); requires that records be maintained and not destroyed; (Paragraph 8); restrained Defendants from

engaging in conduct in violation of the prohibitions contained in the Order or assisting or aiding, directly or indirectly, any other person to engage in such conduct.

16. Defendants' compliance or lack of compliance with these obligations will be a material area of inquiry.

17. On March 15, 2022, Defendant Fraley filed a Motion for Summary Judgment attaching a broad and conclusory Declaration of Defendant Fraley injecting additional facts and issues in this case.

18. Without legal support or logic, Defendant Fraley relies on his own representations in his Motion for Summary Judgment and attached Statement of Facts and Declaration as the "facts" upon which the Court should base its determination. Plaintiff disputes the purported "facts" in Fraley's Motion. Fraley ignores the factual averments of the Complaint and asks this Court to "take his word for it," which is patently contrary to law.

19. By way of example only, Defendant Fraley argues that he did not sell Centurion's products to third party installers; that Plaintiff simply used Centurion products for its own masonry projects – i.e., installing the products directly for the end users; that he does not have any knowledge of Plaintiff's customers; and that he has not made contact with any such customers. ECF No. 27, SUMF ¶'s 12 and 31. Plaintiff disputes these "facts." In fact, Defendant Fraley was introduced to and has personally interacted with Plaintiff's customers.

20. The Complaint, Agreed Temporary Restraining Order, Motion for Summary Judgment and Defendant Fraley's own Declaration make the full and complete depositions of Defendant Fraley all the more important.

C.   Defendant Fraley's Proposed Discovery Restrictions

21. In his Motion and Brief, Defendant Fraley seeks to prohibit areas of inquiry related to his Motion for Summary Judgment contending that such information is "irrelevant, non-discoverable, and unnecessary …." This is a very low standard, and certainly not the standard for the proper scope of discovery

22. Areas of inquiry Defendant Fraley seeks to exclude or limit include the following:

1. Fraley's compensation arrangement with Centurion Stone and how much compensation he has received from Centurion.

23. In addition to this information being calculated to lead to the discovery of relevant evidence, Defendant Fraley put his compensation directly in issue in his Declaration in support of Summary Judgment.

24. In paragraph 4 of his Declaration, Defendant Fraley put in issue his role as an independent contractor with Centurion and described, in a self-serving way, his dealings with dealers, i.e, all dealers, not just Plaintiff Stone Works. Defendant went on to state that he did not make any direct sales which, as discussed below, in previous pleadings he represented that he sells masonry products in several states.

25. In paragraph 26 of his Declaration Fraley denied receiving financial gain or other benefit as a result of Centurion ceasing its relationship with Stone Works as a dealer. Plaintiff believes the evidence will be that Defendant Fraley had substantial personal gain from the sale of Centurion masonry products. Defendant Fraley also profited as a result of terminating Plaintiff as a Centurion dealer and making Co-Defendant Stone Concepts a Centurion dealer in the previous territory of Plaintiff. Defendant Fraley sells Centurion products in these territories.

26. In paragraph 27 of his Declaration Fraley denies any financial gain or other benefit as a result of his improper use and publication of an internal confidential document of Plaintiff

forwarded by its then-employee Plaintiff William Thomas to Fraley.  Defendant contends that this communication resulted in him terminating Plaintiff as a dealer of Centurion. Plaintiff anticipates the evidence will be that Plaintiff's illegally obtained confidential information was used, at least in part, to justify Defendants' actions. Defendant Fraley's compensation arrangement with Centurion is directly in issue in this case and is calculated not only to lead to discovery of relevant evidence but also to lead to evidence supporting Plaintiff's claim of Defendants' conspiracy.

27. Plaintiff would add that the parties are in the process of agreeing to a Protective Order which would protect any interest Fraley has with confidentiality.

    2.   <u>Communications Between Defendant Fraley and Co-Defendants Randy Sims, Megan Sims, William Thomas, and Marty Hesch That Are Not Related To Information Provided By Defendant-Employees To Defendant Fraley About Plaintiff</u>

28. In other words, Defendant Fraley does not want evidence developed regarding the conspiracy of the Defendants to remove Plaintiff as a Centurion dealer and to replace it with Stone Concepts.

29. Nor does he want discovery as to the predatory steps taken by Defendants in the furtherance of their conspiracy.

30. Defendant Fraley's request also ignores the allegations contained in Plaintiffs' Complaint which must be taken as true, including the following:

> 27. On August 12, 2021, Plaintiff spoke with Ed Fraley, the Sales Representative for Centurion Stone, of which Plaintiff was a distributor. Fraley advised he had a received    a confidential document belonging to Plaintiff (a credit application from Plaintiff to  another  manufacturer  and  part  of  the confidential information illegally removed from    Plaintiff's computer systems and files) which indicated to him that Plaintiff was   utilizing  Centurion  Stone's competitor's products for some of Plaintiff's customer's  projects. He indicated that due to his belief Plaintiff would be selling a competitor's product, Plaintiff would no longer be permitted to purchase Centurion Stone products from the factory and would in the future have to buy at a higher price from Stone Concepts, LLC, who buys Centurion Stone products for resale and who, as noted above, now

employs the Sims Defendants. In the past, Defendant Fraley stated to representatives of Plaintiff and others that he would "smoke out" Plaintiff or other businesses who did not conduct business as he wished. Upon information and belief, Fraley has engaged in similar behavior towards other businesses.

28. Further, Plaintiff's current orders of Centurion Stone have been delayed for months, causing Plaintiff to be unable to finish its ongoing projects and unable to collect revenues related to these projects. After multiple inquiries about its pending orders, following the conversation between Plaintiff and Ed Fraley discussed above, Centurion advised Plaintiff that as a result of that call, Centurion will require up-front payment to fulfill all pending orders, which is not standard business practice and has caused Plaintiff damages.

29. Upon information and belief, Fraley has engaged in a pattern of conduct designed to injure or substantially lessen competition and to create a monopoly in commerce related to the manufacture and distribution of stone veneer and masonry.

30. As evidenced by Defendants continued, unabated scheme, it is crystal clear that Defendants will stop at nothing to destroy Plaintiff's business for their own benefit.

31. Defendant Fraley has good reason to try to exclude questions regarding communications with Co-Defendants Megan Sims and Randy Sims, previous employees of Plaintiff and then, at the time of filing of the Complaint, employees of Co-Defendant Stone Concepts. Plaintiff expects the evidence will be that Defendant Fraley knew these two key Co-Defendants who were stealing and stole records and other valuable information from Plaintiff Stone Works and communicated with them both before and after their employment with Plaintiff.

32. Some of these communications occurred while Co-Defendant Megan Sims was downloading and stealing electronic information contained on Stone Works' computer. Complaint ¶ 16.

33. Further, Randy Sims (while an employee of Plaintiff and afterwards) was directly communicating with Co-Defendants Hesch and Fraley. The following phone log evidences the conspiracy between the Defendants:

7

| Date | Time | Parties | Minutes |
|---|---|---|---|
| 07/02/2021 | 03:05 p.m. | Randy Sims & Ed Fraley | 15-minute phone call |
| 07/07/2021 | 04:33/06:44 p.m. | Sims, Fraley & Hesch | phone calls culminating with a 41 minute phone call with Sims & Hesch |
| 07/09/2021 | 07:12 a.m. | Sims & Hesch | 10-min phone call |
| 07/22/2021 | 09:04 a.m. | Randy Sims & Ed Fraley | 6-minute phone call |
| 07/30/2021 | 5:18-5:31 p.m. | Hesch, Sims & Fraley | 2 calls from Hesch then 10 phone call with Sims & Fraley[1] |
| 07/30/2021 | 05:31 p.m. | Randy Sims & Ed Fraley | 10-minute phone call |
| 08/03/2021 | 10:36 a.m. | Ed Fraley & Randy Sims | 11-minute phone call |
| 08/03/2021 | 04:05 p.m. | Ed Fraley and Randy Sims | 9-minute phone call |
| 08/03/2021 | 04:30-04:35 p.m. | Randy Sims & Marty Hesch | 4 Texts |
| 08/03/2021 | 05:36-05:40 p.m. | Randy Sims & Marty Hesch | 3 Texts |
| 08/03/2021 | 07:19-07:20 p.m. | Randy Sims & Marty Hesch | Sims calling Hesch and then immediately calling Fraley |
| 08/04/2021 | 06:43 p.m. | Randy Sims & Marty Hesch | Text |
| 08/04/2021 | 08:47 p.m. | Randy Sims & Ed Fraley | Text |
| 08/04/2021 | 05:47 p.m. | Sims & Hesch | 25-minute phone call |
| 08/05/2021 | 12:14 p.m. | Randy Sims & Ed Fraley | 2-minute phone call |

---

[1] For the month of July there were 93 phone calls and/or texts between Defendant Fraley and Co-Defendant Sims. Many of the text messages contained picture videos. Defendants have not yet produced these text messages. Plaintiff anticipates to be subpoenaed phone records of Defendant's Fraley, Randy Sims, Marty Hesch, Megan Sims and William Thomas will provide further evidence of Defendants' conspiracy.

| | | | |
|---|---|---|---|
| 08/05/2021 | 12:19 p.m. | Randy Sims & Ed Fraley | 16-minute phone call |

34. Further, on or around the same date Defendant Fraley was terminating Plaintiff Stone Work's dealership with Centurion, Co-Defendants Randy Sims and Megan Sims visited Centurion's headquarters. Complaint ¶ 22

35. Defendant Fraley's communications with Co-Defendants Randy Sims and Megan Sims, about which Defendant Fraley seeks to prohibit discovery, are the very communications which are in furtherance of the conspiracy. There is no basis for Defendant Fraley's requested restrictions.

   3. <u>Communications Between Defendant Fraley and Centurion Stone CEO Tim Pardue that Was Not Related To Centurion Stone's Decision To Cease Its Relationship With Plaintiff As A Centurion Stone Dealer</u>

36. Tim Pardue is the CEO of Centurion and is a key witness in this case, as is Centurion. Plaintiff anticipates that after the deposition of Defendants Fraley, Mr. Pardue and/or Centurion Stone could potentially be added as Defendants in this case.

37. The deadline to amend pleadings and add additional parties is May 5, 2022. As a result, it is important that Defendant Fraley's full and complete deposition be conducted before this date.

38. Plaintiff anticipates the evidence will be that Defendant Marty Hesch (owner of Defendant Stone Concepts), Defendant Ed Fraley, and Tim Pardue have a history of personal dealings and relationships. It is also anticipated that evidence will be that Tim Pardue had knowledge of, approved of and possibly participated in Defendants' conspiracy to remove Plaintiff Stone Works as a dealer of Centurion Stone and replace it with Stone Concepts.

39. In paragraph 6 of his Declaration, Defendant Fraley put all dealer relationships with Centurion in issue when he alleged "Centurion does not enter into written contracts with its dealers, and therefore, Plaintiff never had a written contract with Centurion that governed their relationship. As such, Plaintiff's role as a dealer for Centurion was always within Centurion's discretion."

40. Plaintiff expects the evidence will be that Defendant Fraley and Centurion sell millions of dollars of product to Centurion's dealers and that these sales are documented by thousands of invoices, manuals, and other documents. Defendant Fraley received commissions on all or most of these sales.

41. In paragraphs 8 through 10 of his Declaration Defendant Fraley broadly discusses his relationship with dealers of Centurion including "Centurion prefers its dealers to exclusively sell its stone products (and not those of competitors), which I communicated directly to Plaintiff on multiple occasions." Declaration paragraph 10.

42. Plaintiff anticipates the evidence will be that dealers were treated differently, including Fraley's son's Centurion dealership, which Defendant Fraley previously owned. Some were allowed to sell other products, some were not.

43. During the relevant time periods Plaintiff's orders with Centurion were inexplicably delayed and Defendant Fraley was not responsive to calls.

44. It is also anticipated that the evidence will be that Defendant Fraley, Tim Pardue, and Centurion have a history of engaging in similar schemes with similarly situated dealers. As such, Defendant Fraley's actions and course of conduct similar to those employed against Plaintiff, towards similarly situated dealers are directly relevant in this case, including its actions toward Plaintiff.

### 4. Defendant Fraley's Employment With Centurion Stone

45. Again, Defendant Fraley's employment with Centurion was directly put in issue by in his Declaration, including:

- In paragraph 3 of his Declaration Defendant Fraley discusses his work with Centurion and his role as a manufacturer's representative since 2004.

- In paragraph 4 of his Declaration Defendant Fraley discusses his role as an independent contractor on behalf of Centurion and the services he provides to dealers of Centurion and denies making direct sales.

- However, in his September 21, 2021 Motion to Dissolve Ex Parte Restraining Order, Defendant Fraley states he "sells masonry products in multiple states." Paragraph 2.

- Fraley also states he "is not employed by Centurion but he sells its products." Paragraph 10(a). As discussed above, this is contrary to Defendant Fraley's representation in paragraph 4 of his Declaration that, "I do not make any direct sales."

46. All of these issues need to be fleshed out in depositions.

### 5. Pricing Information For Centurion Stone's Products

47. Plaintiff anticipates the evidence will be that different dealers received different pricing and treatment from Defendant Fraley.

48. Further, part of Defendant Fraley's compensation was from revenue generated by Plaintiff, Stone Works, Co-Defendant, Stone Concepts, and other dealers, based upon sales of Centurion products.

49. Disparate pricing which Defendant Fraley and Centurion provided to dealers is also relevant as it allowed Defendant Fraley and Centurion to undercut Plaintiff and other dealers with their customers.

50. Defendant Fraley's compensation and course of conduct with regard to pricing is directly relevant to the issues in this case.

      6. <u>Communication Between Defendant Fraley and Any Officer, Agent or Employer of Centurion Stone That Is Not Related to Centurion</u>

51. Plaintiff's do not quite understand what this means. Regardless, this issue appears to be addressed in paragraph 3, above.

D.    <u>Discussion</u>

52. Discovery, particularly including depositions, is calculated to lead to the discovery of relevant evidence.

53. If Defendant Fraley has objections during the course of the deposition he can assert those objections. If he feels that the deposition is being abused, the Rules of Civil Procedure provide a process to address this including terminating depositions and filing a motion with the Court. F.R.C.P. Rule 30(d)(3).

54. The Rules of Civil Procedure work. They are designed to address discovery disputes and provide guidelines to the parties as to those issues.

55. Although well known to the Court, the method and manner of objecting in depositions should be repeated:

> **(2) Objections.** An objection at the time of examination whether to evidence, to a party's conduct, to the officer's offers qualifications, to the manor of taking the deposition, or any other aspects of the deposition must be noted on the record, but the examination still proceed; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and non-suggestive manner. A person may instruct a

12

> deponent not to answer only when necessary to preserve the privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

FRCP Rule 30(c)(2). In his Motion Defendant Fraley seeks to thwart these requirements.

56. Motions such as Fraley's should be rejected and not be allowed to the new norm for the start of depositions.

### V. Location for Defendant Fraley's Depositions

57. Finally, Defendant Fraley opposes his deposition taking place in Little Rock as opposed to Springfield, Missouri. However, Little Rock should not be an issue or a surprise for him because:

- In fulfillment of his duties with Centurion Defendant Fraley regularly called upon Plaintiff's and Stone Concepts' offices in Arkansas.
- Defendant Fraley's territory for Centurion includes Central Arkansas.
- Defendant Fraley received compensation from sales in Central Arkansas.
- Defendant Fraley sold millions of dollars of Centurion product in Central Arkansas.
- Three out of the four counsel for Defendant Farley are in Little Rock (Bud Cummins, Dan Carter, and Paul James.)
- All counsel in this case except one are in Little Rock.
- Pro Se Defendants Megan Sims, Rand Sims, and William Thomas all reside in Central Arkansas.
- The venue where the litigation was initially filed was Central Arkansas.
- Plaintiff and most of the witnesses in Little Rock reside or do business in Central Arkansas.
- The wrongful acts alleged in the Complaint mainly occurred in Central Arkansas.

- Defendant Fraley removed this case to the United States District, Eastern District of Arkansas.

58. In short, Defendant Fraley should not be surprised by a deposition in Little Rock - he should have expected it.

59. Plaintiff recognizes that this is a decision governed by the sound discretion of the Court.

60. Based on the forgoing it simply does not make sense for counsel and the pro se Defendants to have to load up and spend three (3) days and two (2) nights for Defendant Fraley's deposition in Springfield, Missouri (one day for traveling, one day for depositions, one day for return travel).

61. Nor is Zoom a reasonable alternative. The entire seven (7) hour time period allotted under the Federal Rules of Civil Procedure will likely be needed and Zoom will significantly slow down this process, particularly with the number of counsel and pro se defendants involved. Defendant Fraley's deposition is one of the key depositions in this case and should be in person.

## Conclusion

62. Defendant Fraley seeking an advisory opinion from this Court prior to the conducting of depositions is contrary to the Federal Rules of Civil Procedure and is improper. The request should be denied.

63. Finally, Defendant Fraley's deposition should take place in Little Rock as Noticed.

64. Plaintiff anticipates that in his Reply Defendant Fraley will attempt to explain his contradictions and walk back some of his statements. In doing so it further supports the need for Defendant Fraley's full and complete deposition to flesh out these inconsistencies.

65. For the above reasons, Plaintiff respectfully requests that Defendant Fraley's Motion for Protective Order be denied, and for all other just and proper relief.

Respectfully submitted,

/s/   Patrick R. James
Patrick R. James, ABN 82084
JAMES, HOUSE, SWANN & DOWNING, P.A.
Post Office Box 3585
Little Rock, Arkansas 72203
(501) 372-6555 – phone
Email: pjames@jamesandhouse.com


Erin Cassinelli
LASSITER & CASSINELLI
300 S. Spring St., Suite 800
Little Rock, AR 72201
erin@lcarklaw.com


Timothy J. Giattina
HODGE CALHOUN GIATTINA, PLLC
300 S. Spring St., Suite 800
Little Rock, AR 72201
tim@hcglawoffice.com

*Attorneys for Plaintiff*