**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**Central Division**

| | | |
|---|---|---|
| STONE WORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00941-JM |
| | ) | |
| RANDY SIMS, MEGAN SIMS, WILLIAM | ) | |
| THOMAS, STONE CONCEPTS, LLC, | ) | |
| MARTY HESCH, and EDWARD FRALEY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT EDWARD FRALEY'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Edward Fraley ("Fraley"), for his reply to Plaintiff Stone Works, LLC ("Stone Works")'s *Response to the Motion of Defendant Edward Fraley and Incorporated Brief in Support* (ECF No. 48) (the "Response"), and in further support of its *Motion for Summary Judgment* (ECF No. 26) and *Brief in Support of Motion for Summary Judgment* (ECF No. 27) (collectively the "Motion") suggests:

## I.    INTRODUCTION

Stone Works made a poor business decision, in violation of the rules of its supplier (Centurion), and is suffering the consequences. Stone Works knew that working with a competitor could cause Centurion to terminate its relationship with Stone Works. *See* <u>SUMF</u> (ECF No. 27), ¶13. Nevertheless, Stone Works executed a Commercial Credit Application (the "Application") to purchase manufactured stone from ProVia, one of Centurion's competitors. *See* <u>SUMF</u> (ECF No. 27), ¶¶ 14, 24. In an effort to prevent Centurion from learning of the Application, Stone Works instructed ProVia "DO NOT CONTACT" Centurion, who it listed as a reference in the

1

Application. *See* <u>SUMF</u> (ECF No. 27), ¶¶ 14, 24. Unfortunately for Stone Works, however, one of its employees sent a photograph of the Application to Fraley, a Manufacturer's Representative for Centurion. *See* <u>SUMF</u> (ECF No. 27), ¶¶ 7, 14. Upon learning of Stone Works' intent to work with a competitor and hide such information from Centurion, Fraley reported this information to his superiors at Centurion. Thereafter, Centurion terminated its relationship with Stone Works as a dealer of its manufactured stone, and instructed Fraley to notify Stone Works. *See* <u>SUMF</u> (ECF No. 27), ¶¶ 7, 14.

Now, rather than acknowledging and accepting the consequences of its own decision, Stone Works has chosen to pursue meritless claims against Fraley for doing his job, and reporting to his employer that Stone Works had, or was in the process of, secretly working with a competitor in violation of Centurion's rules. However, Fraley is not liable for Centurion's decision to terminate its relationship with Stone Works, and the undisputed facts of this case clearly demonstrate that there exists no basis to impose personal liability for any of Fraley's conduct. As discussed below, Stone Works' response fails to identify any proper basis for denial of Fraley's Motion, and summary judgment in his favor is warranted.

## II.   ARGUMENT

With respect to each basis for summary judgment contained in Fraley's Motion (ECF Nos. 27 and 28), Stone Works has failed to identify the existence of any genuine issue of material fact and has failed to identify any basis in law, based on the undisputed facts, for denial of the Motion. Accordingly, and as set forth fully below, summary judgment is warranted as to Stone Works' Counts I, II, III, V, VI, VII, IX, XI, and XII.

**A.** **Summary judgment is not premature, and Stone Works' inability to bring forward evidence supporting its claims confirms, rather than defeats, Fraley's entitlement to judgment**

After having more than nine months to obtain evidence implicating Fraley in the wrongdoing it alleges this case, Stone Works has, evidently, failed to locate any such evidence and accordingly asks the Court to defer ruling on Fraley's Motion pursuant to Fed. R. Civ. P. 56(d) until additional discovery has been conducted. Stone Works claims that it should be permitted to continue fishing, and Fraley should, in the meantime, be forced to continue defending against its meritless claims. However, the rules of civil procedure exist to prevent that very result.

This action was originally filed on September 10, 2021, and, as Stone Works noted in prior filings with the Court, even before removal "had begun to make substantial progress and documents and information relevant to many of the issues [ ] were exchanged between the parties." *See* Motion to Expedite Discovery (ECF No. 12). Following removal, Stone Works has been provided significant, further opportunity to conduct discovery. In fact, Stone Works previously sought an extension of time to respond to Fraley's Motion so that it could obtain discovery that it claimed was, specifically, necessary to respond to the Motion. *See* Motion for Extension of Time (ECF No. 28). The Court granted Stone Works' request, and gave it months to conduct the discovery it claimed to need. *See* Order Granting Extension of Time (ECF No. 29).

In response to a motion for summary judgment "[n]onmovants may request a continuance under Rule 56(d) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014). However, "it is well settled that Rule 56([d]) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]." *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997).

3

"To obtain a Rule 56(d) continuance, the party opposing summary judgment must file an affidavit 'affirmatively demonstrating… how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quoting *Humphreys v. Roche Biomedical Lab., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993); *see also Villarreal v. Dewitt*, 1:16-cv-00163-KGB, 2022 WL 993544, at *5 (E.D. Ark. March 41, 2022). Specifically, "[t]he party seeking additional discovery must show: (1) that they have set forth in affidavit form the specific facts they hope to elicit from discovery, (2) that the facts sought exist, and (3) that the sought-after facts are essential to resist the summary judgment motion." *See Toben*, 751 F.3d at 894 (internal quotation marks omitted); *see also California Equity Mgmt. Group, Inc. v. Independent Bank*, No. 3:13-cv-00227-KGB, 2015 WL 1470121, at *1 (E.D. Ark. March 31, 2015) (same). Stone Works has failed to make the requisite showing necessary to delay resolution of Fraley's Motion any longer.

Stone Works' *Rule 56(d) Affidavit of Timothy J. Giattina* (ECF No. 48-5) (the "Giattina Affidavit") fails to establish "(1) …the specific facts [Stone Works] hope[s] to elicit from discovery…, (2) that the facts sought exist, and (3) that the sought-after facts are essential to resist the summary judgment motion." *See Toben*, 751 F.3d at 894. Instead, the Giattina Affidavit, in Paragraph 3 (a – h) speculatively describes broad categories of discovery that Stone Works wishes to conduct, including obtaining responses to discovery requests from Fraley's co-defendants, discovery of communications between parties, discovery of cell phone records, and identification of other non-parties using Centurion stone. *See* Giattina Affidavit (ECF No. 48-5), ¶ 3(a – h). The Giattina Affidavit does not identify any specific facts, provide a statement that such facts exist, or

SPR 17931840.4

describe how such facts relate to Fraley's Motion, and it is, thus, insufficient as a matter of law. *See Toben*, 751 F.3d at 894.

Importantly, other than discovery pending to other defendants, each of the categories of "additional discovery" Stone Works now claims to need were the same categories that it said it was going to conduct discovery on when it first sought, and obtained, additional time to conduct discovery and respond to Fraley's Motion. *Compare* Motion for Extension of Time (ECF No. 28-1), ¶ 3.a.-c. and e.-h., *with* Giattina Affidavit (ECF No. 48-5), ¶ 3.b.-h. Since that time, Fraley was deposed by Stone Works on April 12, 2022 and, on April 15, 2022, Fraley responded to the only written discovery that has been issued to him.[1] Stone Works has been afforded a full and fair opportunity to conduct any discovery necessary to respond to Fraley's Motion.

Stone Works, with this action pending for more than nine months and knowing the grounds for Fraley's Motion for more than three months, remains unable to bring forward evidence supporting its claims. Instead of justifying denial of summary judgment, this situation proves it to be proper. *See Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("A principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses, with due regard being given to the rights of those opposing a claim or defense to demonstrate in the manner provided by Rule 56, prior to trial, that a claim or defense has no factual basis."). Stone Works has been given ample opportunity for discovery, and has failed to meet its burden under Rule 56(d) to show that Fraley's Motion is not properly decided at this juncture.

---

[1] To the extent Stone Works, in the Giattina Affidavit, complains that Fraley objected to its written discovery, despite Fraley also providing answers subject to such objections and agreeing to produce responsive documents, Stone Works has taken no action since April 15, 2022, to compel any further response from Fraley.

SPR 17931840.4

**B.    Stone Works fails to genuinely dispute the facts demonstrating Fraley's right to judgment in compliance with Rule 56 and L.R. 56.1**

In support of his Motion, Fraley filed his *Statement of Uncontroverted Material Facts* (ECF No. 27) ("Fraley's SUMF"), containing 34 numbered paragraphs of facts, each supported by citation to materials in the record, including depositions, documents, and declarations made on personal knowledge. These facts, as discussed in Fraley's *Brief in Support of Motion for Summary Judgment* (ECF No. 26), demonstrate Fraley's entitlement to judgment on each of the claims against him contained in Stone Works' Complaint.

In response to Fraley's SUMF, Stone Works filed its *Statement of Controverted Facts and Material Facts At Issue* (ECF No. 49) ("Stone Works' SCMF"). Stone Works' SCMF notes that "Plaintiff disputes" those facts set out in paragraphs 2, 3, 8, 10-18, 25, 26, 28, 30-34 of Fraley's SUMF, but Stone Works cites no materials in the record to support its assertion that there is a genuine dispute concerning those matters. *See* Stone Works' SCMF (ECF No. 49). Likewise, Stone Works wholly fails to respond to paragraphs 1, 4-7, 9, 19-24, 27, and 29 of Fraley's SUMF. *See id.* The **only** reference Stone Works makes to **any** materials in the record in response to Fraley's SUMF is for the proposition that Fraley "testified that he 'knew it was wrong' for William Thomas to electronically send him Plaintiff's stolen property." *See* Stone Works' SCMF (ECF No. 49), ¶ 25.[2]

---

[2] Fraley never testified that the Application was "stolen property" as suggested in Stone Works' SCMF. The full exchange at Fraley's deposition referenced by Stone Works was as follows:

Q:    Would you like credit apps of your potential dealership to be put on the internet?
A:    No, I would not.
Q:    And you knew it was wrong to send this, didn't you?
A:    I didn't know it was coming. If you notice it's about 6 o'clock one morning.
Q:    But you knew it was wrong for William Thomas to send this to you?
A:    Yes. I knew it was wrong.

*See* Stone Works' Exhibit 1 (ECF No. 48-1), p. 257, l. 18 – p. 258, l. 2.

SPR 17931840.4

Rule 56(c) governs how a party, in support of, or in opposition to, to a motion for summary judgment, must support its factual positions, and provides that:

> A party asserting that a fact cannot be or is genuinely disputed **must** support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*See* Fed. R. Civ. P. 56(c) (emphasis added).

"The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *See Webb v. Lawrence Cnty.*, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant must set forth specific facts showing there is a genuine issue for trial." *See id.* at 1135; *see also Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) ("A party opposing a properly supported motion for summary judgment 'may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'"). "Although [the Court] view[s] the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *See id.*

Additionally, Local Rule 56.1 provides that "[i]f the non-moving party opposes the motion, it shall file, in addition to any response a brief, a separate, short and concise statement of material facts as to which it contends a genuine dispute exists to be tried." *See* L.R. 56.1 (E.D. Ark.). "Failure to properly support or address the moving party's assertion of fact can result in the fact

7

considered as undisputed for purposes of the motion." *Murphy v. Hughes*, No. 1:14-cv-00064-JM-JTK, 2015 WL 589248, at *2 (E.D. Ark. Feb. 11, 2015); *see also Gavin v. Acaley*, No. 6:19-cv-6036, 2019 WL 5866074, at *1 (W.D. Ark. Nov. 8, 2019) (finding that the movant's "facts are deemed admitted" due to the non-movant's failure to comply with Rule 56(e) and Local Rule 56.1(c)).

Stone Works' SCMF wholly fails to meet the requirements of Rule 56(c) and Local Rule 56.1(c) by providing nothing more than "mere denials" of the statements of fact contained in Fraley's SUMF. *See Webb*, 144 F.3d at 1134; *see also Khoury*, 615 F.3d at 952. With respect to each and every fact contained in Fraley's SUMF, Stone Works' SCMF states that Stone Works disputes the fact, but it does so baldly, without any evidentiary support whatsoever. *See* Stone Works SCMF, (ECF No. 49), ¶¶ 1-32. This approach is insufficient to resist summary judgment.

Stone Works' SCMF fails to establish that a genuine dispute exists as to any of the facts contained in Fraley's SUMF. Stone Works chose not to comply with Rule 56(c) and Local Rule 56.1(c), and each of the facts contained in Fraley's SUMF should be deemed admitted.

### C.   Fraley is entitled to summary judgment on Stone Works' claim for civil conspiracy (Count VII), and in each and other claim that relies on a finding of civil conspiracy

Count VII of Stone Works' Complaint asserts a claim for civil conspiracy, and Stone Works contends throughout its Response that its mere allegation of conspiracy constitutes a proper basis for denial of Fraley's Motion as to Counts I, II, III, V, VI, IX, XI, and XII. The uncontroverted material facts, however, establish that Fraley is entitled to judgment on Stone Works' conspiracy claim. Moreover, because Stone Works' claim for conspiracy fails, its fanciful and unsupported allegations of such a conspiracy cannot save Stone Works' other claims from summary judgment. Because Stone Works relies so heavily on its allegations of conspiracy to oppose summary judgment on its substantive causes of action, Fraley addresses this claim first.

8

Throughout its Response, Stone Works repeatedly alleges that Fraley somehow conspired with Defendants Randy Sims, Megan Sims, William Thomas (the "Defendant Employees") and Marty Hesch to obtain a copy of the Application and cause Centurion to cease selling products directly to Stone Works. *See* Response (ECF No. 48). In many such instances, Stone Works alleges facts meant to support of this conspiracy claim, but fails to identify any basis for the facts in the record.[3] *See id.* p. 3-7, 13-16.

Importantly, ***even if*** the Court were to consider these "facts," they fail to rebut any fact contained in Fraley's SUMF and fail to support a cognizable conspiracy claim. The facts relied-upon by Stone Works in its Reply in support of its conspiracy claim(s), if accepted as true, merely demonstrate that Fraley: (1) stated his intent to "smoke out" Centurion's dealers that were working with competitors to the detriment of Centurion; (2) held meetings and telephone calls with the Employee Defendants and Defendant Hesch; (3) obtained a copy of the Application; (4) did not inform Stone Works that he had obtained a copy of the Application;[4] (5) reported the Application to Centurion; and (6) told Stone Works of Centurion's decision to terminate its business relationship with Stone Works. *See* Response (ECF No. 48), pp. 15-16. Accompanying these facts, Stone Works characterizes Fraley's conversations and meetings with the Employee Defendants and Defendant Hesch as "clandestine" and "secret," in an attempt to create the inference that Fraley's conduct was somehow untoward. *See* Response (ECF No. 48), pp. 4, 14. Other than the

---

[3] Certain of the facts contained in Stone Work's Response do contain references to exhibits attached to the Response. However, as set forth in Section II(B), *supra*, Stone Works has failed to present the facts as required by Rule 56(c) and Local Rule 56.1(c). Any facts not presented consistent with the requirements of Rule 56(c) and Local Rule 56.1(c) should not be considered for purposes of the Motion.

[4] Throughout its Response, Stone Works makes regular mention of the facts that Fraley did not report his receipt of the Application to Stone Works and that he "knew it was wrong" for Defendant Thomas to take a photograph of the Application. *See* Response (ECF No. 48) pp. 5, 9, 16. However, Plaintiff cites no authority for the proposition that Fraley had any legal duty to report to Stone Works the conduct of its own employee, and it is wholly unclear how or why Stone Works contends these facts support its assertion of any tortious conduct on the part of Fraley.

SPR 17931840.4

mere fact that the owners of Stone Works were not present, however, Stone Works fails to identify any effort made to keep these communications "secret." The undisputed facts and applicable law demonstrate that Fraley's conduct amounts to nothing more than performing his duties on behalf, and as an agent, of Centurion, which is not unlawful conduct and cannot support a claim for conspiracy against him.

### i. Stone Works presents no evidence that Fraley acted for his personal benefit

"Corporate agents may not be held liable for civil conspiracy in the absence of a showing that they were acting for their own personal benefit rather than for the benefit of the corporation." *See Dodson v. Allstate Ins. Co.*, 47 S.W.3d 866, 876 (Ark. 2001). Stone Works has made no effort to demonstrate that ***any*** of the alleged conspiratorial conduct it attributes to Fraley fell outside the performance of his duties as an agent of Centurion. And for good reason – everything it suggests Fraley did was clearly within the scope of his job duties and in furtherance of the interests of his employer.

Fraley has worked for Centurion as its Manufacturer's Representative since 2004. *See* SUMF (ECF No. 27), ¶ 7. His job duties include recommending potential dealers to Centurion and assisting dealers of Centurion's products within his geographical territory. *See id.*, ¶ 8. Fraley received no financial gain or benefit as a result of Centurion ceasing its dealer relationship with Stone Works, or from his unsolicited receipt of the Application from Defendant Thomas. *See id.*, ¶ 32-33. Stone Works has brought no claim against Centurion, Fraley's employer, and the party that actually made the decision to terminate its dealer relationship with Stone Works.

That Fraley, as an agent of Centurion, said he would "smoke out" businesses that failed to comport themselves with the expectations of Centurion, or that he met with persons expressing an interest in becoming potential dealers for Centurion, or that he reported to Centurion information

10

he had received demonstrating that one of its dealers was violating its standards (and doing so surreptitiously)[5], is all conduct within the scope of his work-duties for Centurion. Accordingly, if there is any claim to be had for a "civil conspiracy" with Defendants Sims, Thomas, Stone Concepts, or Hesch, such claim could only properly be brought against Fraley's principal – Centurion – not against a mere agent acting within the scope of his duties for that principal.

Stone Works has failed to present any evidence that the alleged conspiratorial conduct of Fraley was in furtherance of his personal interest, and not the interests of Centurion, and its claim for civil conspiracy against him fails as a matter of law.

> ii.     **Crying "civil conspiracy" does not impute all conduct of every other Defendant to Fraley**

Stone Works attempts to use its allegations of "civil conspiracy" to save each of its underlying torts, despite a lack of any evidence whatsoever of an actual agreement between Fraley and any of the other defendants to commit any of the specific wrongs alleged. In essence, Stone Works asserts that because it claims Fraley met and had communications with certain of the Defendants, and later informed Centurion about the unsolicited Application he received from Defendant Thomas showing that Stone Works was violating Centurion's dealer standards, all of the other Defendants' alleged conduct (both before and after receiving the Application, and having nothing to do with the Application) can somehow be imputed to him. For example, according to Stone Works, Fraley's unsolicited receipt and reporting of the Application to his employer somehow makes him liable for the subsequent, and wholly separate, conduct of Defendants Sims in allegedly taking computer files when they left Stone Works' employ. But this is not the law.

---

[5] Stone Works does not dispute that it instructed ProVia in the Application "DO NOT CONTACT" Centurion. *See* <u>SUMF</u> (ECF No. 27), ¶ 21. While Stone Works wants to cast aspersions, it seems to forget that this dispute arose because it knowingly and intentionally violated Centurion's dealer standards, and was doing so in a "clandestine," "secret," and surreptitious manner until **its own employees** revealed the scheme to Centurion, through Fraley, unsolicited.

SPR 17931840.4

"A civil conspiracy… requires a **specific intent** to accomplish **the contemplated wrong**."

*See KBX, Inc. v. Zero Grade Farms*, 639 S.W.3d 352, 364 (Ark. 2022); *see also Faulkner v. Ark.*

*Children's Hosp.*, 69 S.W.3d 393, 406 (Ark. 2002). In contrast to a panacea for all of Stone Works'

lack of evidence, "civil conspiracy attache(s)" only to a specific "underlying tort," not all conduct

of all persons. *See id.* As Fraley discusses each of the Stone Works' substantive claims below, it

must be remembered that absent some evidence that Fraley and the other Defendants had, in fact,

"combined to accomplish" **each** separate tort, Stone Works' broad assertion of "civil conspiracy"

is of no assistance to Stone Works. *See id.*

> **D.      Fraley is entitled to summary judgment on Stone Works' claim for conversion (Count I), because the undisputed facts demonstrate that he never exercised dominion over the Application**

Fraley is entitled to summary judgment on Stone Works' conversion claim, because the

undisputed facts demonstrate that Fraley never exercised dominion over the Application. Stone

Works' sole response to Fraley's argument (which is asserted in conclusory fashion, without any

specific reference to the record) asserts that:

> Fraley's own words establish that he knew he was wrongfully in possession of [Stone Works'] property, that he never disposed of but instead republished and resubmitted [Stone Works'] property to a third party, and that he wholly failed to inform [Stone Works] that he had control of [Stone Works'] property until he terminated them as a Centurion dealer.

Response (ECF No. 48), p. 9. This contention demonstrates the multitude of obvious flaws in Stone

Works' conversion claim. First, and most glaringly, Stone Works **still** fails to affirmatively identify

what "property" it alleges was taken by Fraley. *See id.* Instead, Stone Works makes cryptic

references to Fraley's possession and republishing of Stone Works' "property," in an apparent

attempt to obscure the fact that the only thing that Stone Works is referring to is the photograph of

the Application, which was sent to Fraley unsolicited – a photograph that was not created by, and

SPR 17931840.4

never belonged to, Stone Works, of a physical document that remains in Stone Works' actual possession.

Fraley never possessed the Application. *See* <u>SUMF</u> (ECF No. 27), ⁋ 18. Therefore, despite Stone Works' unsupported and conclusory allegation to the contrary, Fraley did not "exercise dominion over" the Application – as a matter of law – because he did not deny or interfere with Stone Works' right to possess the Application. *See Integrated Direct Marketing, LLC v. May*, 495 S.W.3d 73, 75 (Ark. 2016). At most, Fraley possessed a copy of a photograph that portrayed Stone Works' Application. *See* <u>SUMF</u> (ECF No. 27), ⁋⁋ 16-18.[6] Now, without any accompanying facts or legal support, Stone Works asks the Court to impose liability on a theory of conversion for the mere act of Fraley possessing a photograph of Stone Works' property. Stone Works' request is inconsistent with applicable law, and must be denied. Summary judgment in favor of Fraley should be granted on Count I of Stone Works' Complaint.

> **E.**    **Fraley is entitled to summary judgment on Stone Works' claim for tortious interference with business expectancy (Count II), because Fraley has not improperly interfered with any legitimate business expectancy of Stone Works**

In its Response, Stone Works suggests that summary judgment should be denied on its tortious interference claim because (1) it had a business relationship with Centurion, (2) Fraley, as Centurion's independent contractor, knew about Stone Works' relationship with Centurion, and (3) its relationship with Centurion was terminated, causing it to lose business. *See* <u>Response</u> (ECF No. 48), p. 11. This theory fails to afford Stone Work's a cognizable claim tortious interference claim against Fraley.

---

[6] Plaintiff has failed to establish any genuine factual dispute related to Fraley's contentions that a photograph of the Application was sent unsolicited to Fraley by Defendant Thomas, and that Fraley has never possessed paper copies of the Application. *See* <u>SUMF</u> (ECF No. 27), ⁋⁋ 14-18. Instead, Plaintiff merely alleges that it "disputes whether the photographs of the credit application… were 'unilaterally sent'… 'without solicitation'… [and] disputes that Fraley has never possessed any electronic data or information belonging to Plaintiff." As set forth in Section II(a) *supra*, these "mere denials" are insufficient to "show[] there is a genuine issue for trial." *See Webb v. Lawrence Cnty.*, 144 F.3d 1131, 1134 (8th Cir. 1998).

SPR 17931840.4

First, as a matter of law, Fraley cannot have unlawfully interfered with Stone Works' relationship with Centurion. And this is because Fraley was an agent of Centurion. While Stone Works argues that Fraley "was not an employee of Centurion and rather an independent contractor," this distinction makes no difference under Arkansas law. "A party to a contract and its employees **and agents**, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract." *Steinbuch v. Univ. of Ark.*, 589 S.W.3d 350, 360 (Ark. 2019); *see also Stewart v. Advanced Med. Revs., Inc.*, No. 4:17-cv-00338-BSM, 2019 WL 7163428, at *4 (E.D. Ark. May 23, 2019) (explaining that independent contractors are "still agents… and therefore cannot be considered third parties").

Second, Stone Works has not, and cannot, meet its burden of establishing that Fraley's conduct was in anyway "improper." *See Baptist Health v. Murphy*, 373 S.W.3d 269, 281 (Ark. 2010). The uncontroverted facts supported by the record demonstrate Fraley simply received evidence that Stone Works had engaged, or was in the process of engaging, in conduct prohibited by Centurion's dealer standards, and reported that information to Centurion. Applying the Restatement 2d § 767 factors, it is evident that Fraley's conduct and motives were consistent with his employment duties and the desire to protect the interests of his employer. *See Restatement 2d of Torts*, § 767(a), (b), and (d). In contrast, by instructing ProVia "DO NOT CONTACT" Centurion, Stone Works was attempting to prevent Centurion from learning of its relationship with a competitor. *See id* at § 767(c). Obviously, there exists a strong "social interests in protecting the freedom of action of [Fraley]" to advise his employer of deceit by a business partner. *See id* at § 767(d).

In sum, it is Stone Works, not Fraley, that acted improperly, and there is no conceivable basis to conclude that Fraley tortiously interfered with Stone Works' relationship with Centurion

SPR 17931840.4

– a relationship that Stone Works knowingly put at risk by violating Centurion's dealer standards. Stone Works' claim for "tortious interference" amounts to nothing more than it having been caught by an agent of Centurion doing something that it knew was wrong, and then complaining that it has suffered the foreseeable consequences of its own nefarious conduct.

**F.      Fraley is entitled to summary judgment on Stone Works' claim for misappropriation of trade secrets (Count III), because the Application is not a "trade secret" that was "misappropriated" by Fraley**

Stone Works' Response similarly provides little defense of its Count III, in which Stone Works purports to assert claims pursuant to both the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Arkansas Trade Secrets Act ("ATSA"), Ark. Code. Ann. § 4-75-601, *et seq.*[7] Fraley is entitled to judgment as a matter of law because the Application is not a "trade secret" and was not "misappropriated" by him.

Stone Works provides no substantive response to Fraley's contention that the Application is not a trade secret sufficient to give rise to a DTSA claim and that Fraley did not misappropriate the Application. Instead, Stone Works makes only the conclusory argument that "[u]nder the plain reading of the statute, Stone Works' financial information included in the credit application that was stolen by Defendant-Employees constitutes a trade secret." Response (ECF No. 48) p. 13. Stone Works is incorrect, both because the Application is not a "trade secret" and it was not "misappropriated" by Fraley.

First, the Application does not constitute or contain a "trade secret" for purposes of the DTSA. The DTSA provides categories of information, including financial, business, scientific, and technical information which, "if the owner thereof has taken reasonable measures to keep such information secret… [and] the information derives independent economic value," constitute a

---

[7] In its Response, Stone Works fails to address Fraley's argument that its claim under the ATSA fails, and discusses only its claim under the DTSA. Accordingly, Fraley likewise limits his reply to discussion of the DTSA.

SPR 17931840.4

trade secret for purposes of the DTSA. *See* 18 U.S.C. § 1839(3). In its Response, Stone Works provides no explanation of how or why the Application can constitute a "trade secret." *See* <u>Response</u> (ECF No. 48), p. 11-13 (asserting in conclusory fashion, that the Application "constitutes a trade secret"). As explained in Fraley's *Motion* (ECF No. 26), the Application does not contain any trade-related or proprietary information that could even conceivably constitute a trade secret. Instead, it provides general information and requests credit to purchase manufactured stone. *See* <u>Fraley Exhibit 1-A</u> (ECF No. 27-2). Stone Works' "trade" is masonry. The only conceivable "trade" information for the masonry industry which can possibly be gleaned from the Application is that Stone Works utilizes manufactured stone, which is far from a secret. Therefore, the Application and information it contains is not "secret" and summary judgment is warranted. *See Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global, Inc.*, No. 4855(KPF), 2022 WL 1471033, at *6 (S.D.N.Y. May 10, 2022) ("A trade secret must first of all be secret").

Second, the Application does not constitute a trade secret because Stone Works has identified no "reasonable measures" that it has taken to keep it secret. *See CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560, 564 (8th Cir. 2019). In its Response, Stone Works argues that it maintained the Application's secrecy by keeping the Application in Stone Works' main office, where only employees could access it. *See* <u>Response</u> (ECF No. 48), p. 13. However, by Stone Works' logic, every document at every office would satisfy the "reasonable measures" requirement, which is unsupported by the law. Indeed, affirmative steps must be taken to satisfy the "reasonable measures" requirement including, for example, requiring individuals to execute a confidentiality agreement before accessing the secret materials, *see Pinebrook Holdings, LLC v. Narup*, 4:19-cv-1562-MTS, 2022 WL 1773057, at *8 (E.D. Mo. June 1, 2022), restricting employee access to trade secret materials such that they are only shared with those that "need to

16

know" or password protecting secret materials, *see HB&G Building Products, Inc. v. Digger Specialties, Inc.*, No. 2:22-cv-329-ECM, 2022 WL 1913604, at *5 (M.D. Ala. June 3, 2022), and alerting employees that certain documents contain trade secret information and should not be disseminated, *see Catalyst Advisors, L.P. v. Catalyst Advisors Investors Global, Inc.*, 21Civ.4855(KPF), 2022 WL 1471033, at *9 (S.D.N.Y. May 10, 2022). Here, Stone Works has identified no reasonable measures taken to preserve the secrecy of the Application, and the Application therefore cannot constitute a trade secret pursuant to the DTSA.

Third, even if the document does constitute a "trade secret" for purposes of the DTSA (it does not), Stone Works has failed to identify any genuine dispute regarding Fraley's contention that a photograph the Application was sent to unsolicited by Defendant Thomas. *See supra* § II(B). Thus, Stone Works cannot demonstrate that Fraley "misappropriated" any materials belonging to Stone Works.

Stone Works' claim for misappropriation of a trade secret fails as a matter of law, and summary judgment should be entered in Fraley's favor on Count III of Stone Works' Complaint.

**G.     Fraley is entitled to summary judgment on Stone Works' claim for unauthorized computer program access and theft (Count V), because the undisputed facts demonstrate that the Application is not electronic information and Fraley did not commit theft of the Application**

The uncontroverted facts establish that Fraley has neither committed theft of electronic information, nor obtained any electronic information belonging to Stone Works. *See* SUMF (ECF No. 27), ¶¶ 14-16. Stone Works' Response identifies no dispute as to these facts, and appears to concede that Fraley did not personally engage in the conduct complained of in Count V.

Stone Works, instead, relies upon its allegation of a "conspiracy" and contends that, even if Fraley did not commit theft of electronic information, he can nevertheless be liable for the theft of electronic information committed by the other defendants on a theory of conspiracy. *See*

SPR 17931840.4

Response (ECF No. 48). However, Fraley cannot be liable for Defendants Sims' and Thomas's alleged theft of electronic information from Stone Works' "private servers and databases through their... employee logins," *see* Complaint (ECF No. 4), ¶ 57, absent evidence of him having "specific intent to accomplish" that wrong, and having "combined [with those defendants] to accomplish" that specific purpose. *See KBX, Inc.*, 639 S.W.3d at 364; *Faulkner*, 69 S.W.3d at 406 (Ark. 2002). Stone Works provides no evidence of any conspiracy to commit **that underlying tort**, or any conduct in furtherance of **that tort** by Fraley.

Stone Works' allegation of a general "conspiracy," wholly divorced from the actual conduct giving rise to its claim for "unauthorized computer access and theft," cannot save this claim. Fraley is entitled to summary judgment on Count V of Stone Works' Complaint.

### H.   Fraley is entitled to summary judgment on Stone Works' claim for "unauthorized access to property" (Count VI), because Fraley did not access any non-public area of commercial property

Stone Works' Response does not address, and appears to concede, Fraley's argument that its claim for "Unauthorized Access to Property" fails because the undisputed facts demonstrate he did not improperly access a nonpublic area of Stone Works' property as required to maintain this claim. *See* Motion (ECF No. 26), p. 16. For the reasons set forth in the Motion, summary judgment should be entered in Fraley's favor on Count VI.

### I.   Fraley is entitled to summary judgment on Stone Works' claim for violation of the Arkansas Deceptive Trade Practices Act (Count IX), because Fraley's alleged conduct was not a consumer-oriented act or practice

Stone Works wholly misconstrues Fraley's arguments with respect to the Arkansas Deceptive Trade Practices Act (the "ADTPA"), Ark. Code. Ann. § 4-88-101, *et seq*. In its Response, Stone Works argues, and cites a handful of cases for, the proposition that business entities such as Stone Works fall within the scope of the definition of "Person" as set forth in the ADTPA, and can therefore assert ADTPA claims as members of the business community. *See*

18

Response (ECF No. 48), p. 18-19. But Fraley has never disputed whether Stone Works is a "person" as defined in the ADTPA. Instead, summary judgment is warranted because the acts complained of by Stone Works do not constitute a "consumer-oriented act(s) or practice(s)," which must form the basis for an ADTPA claim. *See* Motion (ECF No. 26), p. 20.

Stone Works' Response contends that the ADTPA offers a cause of action to any "person," as defined by Ark. Code. Ann. § 4-88-102(5) to include organizations, groups, associations, partnerships, and corporations, that "suffers damages as a result of an unconscionable, false or deceptive act or practices in business commerce or trade." *See* Response (ECF No. 48), p. 19; *see also Electrocraft Arkansas, Inc. v. Super Electric Motors, Ltd.*, 4:09-cv-00318, 2009 WL 5181854, at *7. Fraley does not dispute that a business can have standing to assert ADTPA claims under Ark. Code. Ann. § 4-88-102(5). *See* Motion (ECF No. 26), p. 20. However, a claim does not lie where the complained-of conduct is not a "deceptive consumer-oriented trade or practice." *See Parnell v. Fanduel, Inc.*, 591 S.W.3d 315, 318 (Ark. 2019); *see also Apprentice Info. Sys., Inc. v. DataScout, LLC*, 544 S.W.3d 536, 539 (Ark. 2008) ("The elements of a[n ADTPA] cause of action are [] a deceptive consumer-oriented act or practice.").

As noted in the Motion and not addressed in Stone Works' Response, in *Apprentice Info.*, the Arkansas Supreme Court discussed the distinction between a "consumer-oriented act" and the plaintiff's claims addressing a "thwarted business model, [without] a specific harm to consumers." *See Apprentice Info.*, 544 S.W.3d at 539. Since the plaintiff's claims did not relate to "consumer-oriented acts" the court reversed the circuit court's finding that an ADTPA violation had occurred. *See id.*

Here, like the plaintiff's claims in *Apprentice Info.*, the acts complained of by Stone Works – Fraley obtaining and reporting to Centurion information contained in the Application – is not a

SPR 17931840.4

"consumer-oriented act or practice." Accordingly, Fraley is entitled to summary judgment on Count IX of Stone Works' Complaint.

**J.      Fraley is entitled to summary judgment on Stone Works' claim for unjust enrichment (Count XI), because Fraley has not received anything of value**

Despite failing to plead or present any evidence that Fraley has received something of value from Stone Works, Stone Works curiously argues that *R.K. Enterprises, LLC v. Pro-Comp Mgmt., Inc.,* 272 S.W.3d 85, 88 (Ark. 2008), prevents summary judgment because it can recover damages for the "fair market value of the trade secrets" allegedly misappropriated by Fraley. *See* Response (ECF No. 48), p. 20-21. However, as discussed in Section II(F), *supra*, the Application is not a "trade secret," and, in any event, Stone Works fails to explain how the Application (the allegedly misappropriated "trade secret") has any identifiable economic value. *See id.* It does not.

The Application shows only general information about Stone Works, and evidences Stone Works' intent to purchase ProVia manufactured stone. *See* Fraley Exhibit 1-A (ECF No. 27-2). Since this information is of no economic value, it cannot be fairly argued that Fraley was unjustly enriched by obtaining the information contained in the Application.

Stone Works casts aspersions on Fraley's "credibility" based on contrived "inconsistencies" it claims to see in his testimony. But it presents no evidence contradicting, or genuinely disputing, his declaration that he has "not received any financial gain or any other benefit as a result of Centurion ceasing its relationship with [Stone Works] as a dealer." *See* Fraley Exhibit 1 (ECF No. 27-1), ¶ 24. Stone Works asserts, baldly, that "it is unfathomable that any of the Defendants would have taken any of these steps or practiced the conduct in question with no benefit to themselves." *See* Response (ECF No. 48), p. 22. However, the only "conduct" of Fraley "in question" is him doing his job on behalf of Centurion and reporting Stone Works' violation of

SPR 17931840.4

Centurion's known dealer standards. It is by no means "unfathomable" that Fraley, as an agent of Centurion, would perform the job duties his employer expects of him.

Stone Works' burden at summary judgment is to present evidence, not conjecture, supporting its claim; and Stone Works has failed to meet its burden. Fraley is entitled to summary judgment on Count XI of Stone Work's Complaint.

**K.     Fraley is entitled to summary judgment on Stone Works' claim for "punitive damages" (Count XII), because Stone Work's has no cognizable, substantive claim against Fraley**

As discussed in Sections II (A – J), *supra*, Fraley is entitled to summary judgment as to each substantive claim asserted by Stone Works. Punitive damages may be awarded only where a defendant is liable for compensatory damages, and the plaintiff has established the existence of aggravating factors contained in Ark. Code. Ann. § 16-55-206. Where, as here, "no reasonable jury could find grounds for awarding punitive damages," summary judgment is warranted. *See Wheeler v. Carlton*, No. 3:06-cv-00068-GTE, 2007 WL 30261, at *8 (E.D. Ark. 2007).

Like its response to every other argument made by Fraley in his Motion, Stone Works fails establish the existence of any genuine dispute of facts with respect to its claim for punitive damages. Rather than identify facts or evidence in the record tending to support a claim for punitive damages, Stone Works merely recites, in conclusory fashion, its allegations that Fraley conspired with his co-Defendants and has caused harm to Stone Works. *See* <u>Response</u> (ECF No. 48), p. 23. These allegations do not suffice to rebut the any of uncontroverted facts put forward by Fraley and supported by the record, which establish that Fraley did nothing more than receive an unsolicited text message from Defendant Thomas and report that photograph to his employer, Centurion. Since there exists no basis for Stone Works to recover an award of compensatory damages and no reasonable jury could find a basis for punitive damages, Fraley is entitled to summary judgment on Count XII.

WHEREFORE, Defendant Edward Fraley respectfully requests the Court enter its order granting him summary judgment on Counts I, II, III, V, VI, VII, IX, XI, and XII of Plaintiff Stone Works, LLC's Complaint, and awarding him such other and further relief as the Court deems just and proper.

*Respectfully submitted,*

Jason C. Smith AR 2006103
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Mo. 65804
Telephone:  417-888-1000
Facsimile:   417-881-8035
jcsmith@spencerfane.com

and

Harry E. "Bud" Cummins AR 89010
The Law Offices of Bud Cummins
1818 N. Taylor St. #301
Little Rock, AR 72207
bud@budcumminslaw.com

and

Daniel R. Carter AR 80023
JAMES & CARTER, PLC
500 Broadway, Suite 400
Little Rock, AR 72201
dcarter@jamescarterlaw.com

*Attorneys for Defendant Edward Fraley*

SPR 17931840.4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 1st day of July, 2022, a true and accurate copy of the foregoing instrument was filed with the Court's electronic filing system, which sent notice of such filing to the following attorneys of record:

Rickey Hicks
902 West Second St.
Little Rock, AR 72201
hickslawoffice@yahoo.com

Timothy Dudley
10201 W. Markham, Ste. 328
Little Rock, AR 72205
todudley@swbell.net
**Attorneys for Defendants Sims**

Rickey Hicks
Dustin McDaniel
Scott Richardson
McDaniel, Wolff & Benca, PLLC
1307 West Fourth St.
Little Rock, AR 72201
scott@mwbfirm.com
**Attorneys for Stone Concepts, LLC**
**And Hesch**

Erin Cassinelli
Lassiter & Cassinelli
300 S. Spring St., Suite 800
Little Rock, AR 72201
**erin@lcarklaw.com**

Timothy Giattina
Hodge, Calhoun Giattina, PLLC
711 W.3rd St.
Little Rock, AR 72201
tim@hcglawoffice.com
**Attorney for Plaintiff**

The undersigned hereby certifies further that on this 1st day of July 2022, a true and accurate copy of the foregoing instrument was mailed via U.S. Regular Mail postage prepaid to Pro Se Defendant William Thomas, 1205 Anemone Dr., North Little Rock, AR 72117.

Jason C. Smith AR 2006103

SPR 17931840.4